Ronnie W. FITZGERALD,
Claimant/Respondent,

v.

Helen MEYER d/b/a Meyer & Son, Inc., Employer/Appellant,

and

Auto Owners Insurance Company,
Insurer/Appellant.

No. 59885.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 12, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 1991.

Application to Transfer Denied
Jan. 28, 1992.

Kessler & Kessler, Morris B. Kessler, St. Louis, for claimant/respondent.

Reinert & Duree, P.C., David M. Duree & Robert L. Carter, St. Louis, for employer/appellant.

KAROHL, Justice.

Employer, Helen Meyer, d/b/a Meyer & Son, and insurer, Auto Owners Insurance Company, appeal worker's compensation award allowing employee compensation under The Workers' Compensation Law, Chapter 287. The Labor and Industrial Relations Commission affirmed the award of the Administrative Law Judge (ALJ) with a modification increasing part of the award. (Lester L. Watkins, dissenting in part.) All awards, except those for nursing care, are affirmed. The awards for nursing care prior to the date of hearing, January 10, 1990, are reversed. We remand to the Commission for reconsideration of the claim for nursing care after the date of hearing.

The ALJ found employee, Ronnie Fitzgerald, sustained a serious compensable injury to his left foot on June 1, 1985. The ALJ also found the accident caused disability relating to back, neck and head complaints, major depression and posttraumatic stress disorder. Fitzgerald was assisting in the removal of a tree stump when his left foot was struck by a backhoe causing crushing injuries to the left foot. The left great toe was amputated by Dr. Barrett K. Holder, an orthopedic surgeon.

The ALJ recognized employer-insurer paid "some $15,000.00 in benefits" before the hearing. He awarded full disability at the level at the great toe; 50% permanent partial disability to the left foot at the 155 week level; permanent partial disability referable to the spine of 10% of the man as a whole; 15% of the total man as permanent partial psychiatric disability; nursing care for ten weeks after the accident, calculated at $7.50 per hour for fifty-six hours per week; nursing care from August 24, 1985,

to the date of award, April 3, 1990, calculated at $7.50 per hour for two hours per day; and nursing care at the same rate for two hours per day, seven days per week to the extent necessary in the future.

After a timely application for review, the Commission affirmed all of the awards except it felt constrained to modify and increase the award for nursing services rendered after August 24, 1985, because of the decision of the Western District of this court, *Jerome v. Farmers Produce Exchange*, 797 S.W.2d 565 (Mo.App.1990). The Commission was "inclined to affirm two hours [per day] or reduce the award of nursing services." However, because of *Jerome* and the testimony of employee's wife and expert that nursing services were required eight hours per day, it concluded the two hour figure must be amended to eight hours per day and the award increased to equal $7.50 per hour. The Commission observed there was no evidence of lesser need and no cross-examination of employee's witnesses about time requirements. Employer-insurer continue to oppose any award for nursing care because employee never requested nursing care before the hearing. They contend the need for home care was not obvious and rely on the fact employee was able to return to work in April 1986. Employee did return to work in May 1986 as a laborer.

At the beginning of the hearing on January 10, 1990, before the ALJ, it was admitted and agreed employer was operating under the provisions of the Missouri Workers' Compensation Law on June 1, 1985; employer's liability was fully insured by Auto Owners Insurance Company; on "June 1, 1985, Ronnie Fitzgerald was an employee of Helen Meyer, etc."; employee was working under the provisions of the compensation law; "on or about June 1, 1985, Ronnie Fitzgerald sustained an injury by accident arising out of and in the course of his employment"; and notice of injury was given and the claim timely filed under the law. The parties also agreed on employee's average weekly wage and compensation rate. Finally, it was agreed compensation had been paid before the hearing in the amount of $6,913.97 for forty-seven and one seventh weeks and medical had been paid in the amount of $9,050.45. Before accepting testimony, the ALJ noted a discussion off the record that employee claimed medical provided by the employee himself as a result of the accident. Employer-insurer responded there was no pleading in support of that claim and the announcement at the time of the hearing was "first notice that there was such a claim."

■ In light of these stipulations and agreements, we find employer-insurer preliminary claim of error has merit. They claim the Commission erred in affirming a finding of fact of the ALJ that employer-insurer denied the existence of a covered accident and refused to provide requested medical or home nursing care, past and present, as well as unclaimed and unpled probable future medical requirements because the finding is not supported by the evidence. The finding of the ALJ that "[t]he employer's attorney also stated at the time of the hearing that he wished to show accident to be an issue in dispute" is disproven by the record. Although employer's answer to claim for compensation was in the nature of a general denial, the announcement at trial was employer-insurer agreed employee sustained a covered accident, recognized compensation coverage and furnished all requested medical payments and temporary disability under the compensation law before the hearing. Employee did not request home nursing care, past or future, before the hearing. Hence, there was no refusal to provide such services, if needed, before the hearing.

■ We find employee, as a matter of law, was not entitled to awards for home nursing care prior to the hearing. The awards for home nursing care services rendered by Joan Marie Meyer, employee's wife and the daughter of employer Helen Meyer, were allowable only where employer had notice of need for such care or a demand for such care and employer refused, failed or neglected to provide the treatment. *Hawkins v. Emerson Elec. Co.*, 676 S.W.2d 872, 880 (Mo.App.1984).

Wife is not a health care professional. Employer-insurer acknowledged an obligation and provided employee with all medical care requested. In the absence of a request or demand, employee was not entitled to a reimbursement of award. Section 287.140(9) RSMo Cum.Supp.1990. Nor was there evidence to support a finding employer-insurer waived a statutory right to notice or demand and selection of a needed health care provider. *See Stephens v. Crane Trucking, Inc.,* 446 S.W.2d 772, 779 (Mo.1969). There is no dispute employee left the hospital in June 1985 and lived in the home of Helen Meyer, his employer, until August. In that way employer with the assistance of her daughter furnished home nursing care.

■ Employee and Joanne Marie Meyer, were married in October, 1985. Thereafter, she rendered services to the date of the hearing which may have been partly those of a nurse and partly those routinely performed by a spouse (i.e. meal preparation). She was not a trained nurse. There was evidence of the reasonable value of nursing services. Employee offered the testimony of an expert who was an attorney and trained nurse. She testified home nursing services were necessary to the time of the hearing and will in the future be required. However, there was no evidence employee was indebted or obligated to pay for past nursing services rendered before the hearing on January 10, 1990. The decisive fact is there was no request for nursing care and consequently, no failure to provide such services after a request where the claim for other medical care was honored.

The awards for the value of home nursing care before the request during the hearing were error as a matter of law. We reverse those awards. Section 287.495 RSMo 1986. *Specie v. Howerton Electric Co.,* 344 S.W.2d 314, 316 (Mo.App.1961).

This ruling disposes of three claims of Commission error regarding home nursing services except for the award for future care. The need of future home nursing services is supported by a request made during the hearing and the testimony of an expert. The ALJ allowed two hours per day at $7.50 per hour until the need for such services terminated. The Commission accepted the rate but increased the hours to eight hours per day to conform with the only evidence of the extent of need. The ALJ found wife's services included but were not restricted to: "helping claimant dress himself; assistance getting into and out of shower and bathtub; administering Betadine soaks to the injured foot; and daily massages to the neck, back and lower left leg." Wife testified at the time of the hearing she spent "a good eight hours per day" assisting her husband. In the nighttime, she would rub the leg for cramps, get Tylenol pills or assist with bathroom needs. Wife helped her husband dress; assisted four times a day with Betadine soaks, put lotion on the foot to keep the skin moist; and prepared meals. There was no evidence of how much time was required to perform each service, particularly how much of the eight hours were "nurse" or "spouse" work.

The award of future nursing services is supported by the evidence. A request for such services was made through presentation of evidence at the hearing. Employee is entitled to an order that employer-insurer furnish the services or pay what the ALJ and Commission found to be a reasonable sum of $7.50 per hour for home nursing services as long as required.

In the alternative, employer-insurer contests the finding eight hours a day must be authorized. They claim the Commission misread *Jerome,* 797 S.W.2d at 565. We find the Commission was not obligated to increase the decision for two hours per day nursing services to eight hours per day because of the decision in *Jerome.*

In *Jerome,* the court held the Commission erred in allowing only one hour of care per week to the wife of an injured employee. The employee was injured extensively when a truck overturned. He subsequently married. His wife was a qualified medical assistant with eight or nine years work in the medical field. There was "[e]xtensive cross-examination of [employee] ... aimed chiefly at the amount of time [wife]

spent assisting him with his medical problems and the time she would spend helping him up, opening doors, getting in and out of restrooms and performing similar duties." *Id.* at 566. Two commissioners arrived at a figure of one hour of care per week. One wanted to allow twenty-one hours care per week. The court reversed the award and remanded for reconsideration of the extent of required nursing care (Shangler, J., separate opinion concurring in result, Clark, J., concurring in opinion of Shangler).

The court found the decision of one hour per week was speculative and not in conformity with the evidence. *Id.* at 568. The court said, "However, once [the Commission] agreed the nursing duties were justified they were required to base their judgment on the evidence and not their speculative idea of how much time [wife] spent in care for [employee]." *Id.* The concurring opinion concludes the award of one hour per week was contrary to the overwhelming weight of the evidence, even when considered in a light most favorable to the decision. *Id.* at 571. It recognized the function of the Commission to pass on credibility of witnesses. On the issue of required services the concurring opinion suggests the Commission should find as a fact the extent of required services based on testimony which it believes. *Id.* Certainly there must be evidence to support a finding. Section 287.495 RSMo 1986.

*Jerome* does not hold the Commission on remand must accept employee's testimony that his wife rendered twenty-five hours per week home nursing services. All that is required is the award be supported by the evidence as found by the Commission. After remand, the Commission awarded Jerome eleven and one half hours a week for home nursing services from the date first requested, so long as the employee is in need of nursing care. The Commission distinguished the claim in *Stephens*, 446 S.W.2d at 772 from *Jerome*, noting that claimant Stephens was confined to bed and unable to care for himself but claimant Jerome had the ability to do almost everything for himself, without assistance. *Id.* at 568. The Commission calculated the award on the basis of an estimate of twenty-five hours per week but subtracted thirteen and one half hours for meal preparation services.

On remand of this case, the Commission may review the entire record and make findings of the amount of time required to render necessary home nursing services. Section 287.495 RSMo 1986. It is not required to accept estimates if the estimates are not believed to be reliable as a measure of the time necessary to render required services. Wife testified to eight hours per day but some of her services were not "above and beyond the services ordinarily performed by a wife." *Stephens*, 446 S.W.2d at 781. Accordingly, the finding of the Commission supporting an award of eight hours per day home nursing care is supported only by testimony which includes some services not subject to award. We agree with the Commission and the dissenting commissioner in observing the record may not be adequate to determine the extent of required nursing care from the date of the original hearing. If the record is inadequate, then the Commission should require further evidence and make an award requiring employer-insurer to furnish necessary home nursing care or, in the alternative, compensate employee only for wife's nursing services. Section 287.495 RSMo 1986.

Employer-insurer also appeal the award for psychiatric disability. They contend the proof was insufficient to support the award, or in the alternative, it is contrary to the weight of the evidence. They argue the claim was first made three years after the date of accident, there was no psychological treatment, there is another potential medical explanation for the disability, if any, and the expert opinion was based solely on a single examination for evaluation. Dr. Ebrahim Amanat, a licensed medical doctor-psychiatrist, testified for employee. He diagnosed:

On Axis 1, which is the overt psychiatric disorder, I diagnosed him as having major depression, a single episode and

post-traumatic stress disorder with delayed onset....

On Axis 2, I diagnosed the dependent personality disorder secondary type as a result of post-trauma stress. And especially his unusual dependence on his wife and myself to help him.

On Axis 3, I did not do a physical examination of him but reviewed the reports by his physicians.

On Axis 4, there are moderate to severe psychosocial stressors because of his social isolation and dependence on his wife and inability to work.

This testimony constitutes substantial and competent evidence supporting the psychiatric disability award which we may not disturb. We view the evidence in the light most favorable to the award. *Brown v. Hillhaven Convalescent Center*, 776 S.W.2d 47, 48 (Mo.App.1989). Point denied.

■ Employer-insurer also contend employee did not prove the need for future medical services, or in the alternative, this award ignores the weight of the evidence. In addition to the evidence supporting indefinite need for home care services, there was evidence employee will permanently require a foot appliance to assist in walking and it must be replaced periodically. Point denied.

■ Finally, employer-insurer claim the permanent partial disability award for neck and back injuries were not proven or the award is contrary to the weight of the evidence. They argue these claims first occurred twenty-two months after the date of the accident and the claim is supported only by the testimony of a chiropractor who conditioned the diagnosis and opinion of causation on the absence of a pre-existing condition, the existence of which was not disproven. We disagree. Dr. Nasrallah testified the loss of the left great toe caused employee to suffer "from falling, difficulty walking, difficulty bearing weight, difficulty keeping his equilibrium, his balance and all this is directly in connection with the above-mentioned injury which occurred on 6–1–85." He found "acute thora-columbar sprain and strain syndrome, involving the L4–5, S1 area; severe cervico-

thoracic contusion generalized." His diagnosis, opinion of causation, and rating were accepted by the ALJ and the Commission. Point denied.

All awards, except those for nursing care, are affirmed. The awards for nursing care prior to the date of hearing, January 10, 1990, are reversed. We remand to the Commission for reconsideration of the claim for nursing care after the date of hearing.

SMITH, P.J., and AHRENS, J., concur.