**Robert L. VINSON, Appellant,**

v.

**CURATORS OF the UNIVERSITY OF MISSOURI, Respondent.**

No. 59203.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 17, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 14, 1992.

Application to Transfer Denied Feb. 25, 1992.

Ernest L. Keathley, Jr., St. Louis, for appellant.

Raymond J. Flunker, Jeffrey Proske, St. Louis, for respondent.

SATZ, Judge.

This is a worker's compensation case. Claimant, Mr. Robert Vinson, appeals from the finding of the Labor and Industrial Relations Commission (Commission) that he sustained a twenty percent permanent partial disability. We affirm in part and reverse and remand in part.

Claimant raises several issues on appeal. Two of them rest on his conclusion that he was permanently totally disabled, rather than permanently partially disabled.

At the time of his injury, claimant was employed as a floor maintenance worker at the University of Missouri, St. Louis. (UMSL) His duties included cleaning, waxing and buffing floors and moving furniture to fulfill those duties. On May 21, 1986, while on the job, he injured his back moving furniture.

Claimant's conclusion that he is permanently and totally disabled is based upon his interpretation of oral testimony and his view of the legally allowable inferences that may be drawn from that interpretation. He contends his uncontroverted evidence shows that his mental capacity, education and training limit him to heavy manual labor, and he contends UMSL's evidence shows his work-connected injury caused him to be unable to do that kind of work. Moreover, he contends, there is no evidence showing he is capable of performing light work. Therefore, he reasons, the evidence shows his injury has made him unemployable, which means he is permanently totally disabled.

Implicit in this argument is claimant's unarticulated premise concerning the par-

ties' respective burdens of proof. Implicitly, claimant assumes it was UMSL's burden to show there was light work available to him and not his burden to show light work was unavailable. This unexpressed allocation of this burden of proof is simply an unexpressed application of the "odd-lot" doctrine. *See* 2 Larson *Workmen's Compensation Law* §§ 57.61 (1989). We need not discuss the logic of this doctrine nor its acceptance in Missouri, however. Claimant's use of the doctrine depends on his interpretation of the testimony of UMSL's medical expert, which, he contends, shows that claimant's injury caused him to be incapable of doing heavy manual labor. This contention is not justified by record.

UMSL's medical expert was Dr. James Stiehl. Claimant's contention is based upon a part of Dr. Stiehl's testimony on re-cross-examination. To put this testimony in proper context, however, it must be viewed in light of Dr. Stiehl's other testimony.

On direct-examination, Dr. Stiehl said that claimant's work-connected injury was a "lumbosacral sprain" which caused claimant "a partial permanent disability ... [of] 10 to 15 percent." Consistent with this testimony, he said that claimant "had significant to advanced degenerative changes in his back that most likely had been of longstanding nature and were causing him chronic lower back pain that was keeping him from going back to work. . . . [I]t was unlikely that [his] injury was causing [his] prolonged and persistent disability. . . ."

On cross-examination, Dr. Stiehl's testimony was no different. "[W]hat has kept [claimant] from work and has made him disabled at this point", Dr. Stiehl said,

> is long-standing occupational back disease with severe degenerative arthritis. . . . [L]imitations of motion and this sort of thing where he is unable to do lifting ... [is] based on the fact that he has ... a bad back. . . . I cannot state with conclusion [sic] that this causal episode of May of 1986 has led to the problem that he has not been able to return to work. It may have been one more exacerbation that caused him to have

pain that took him away from his work but it did not cause the back problem that he has today.

On re-cross-examination, claimant's counsel asked Dr. Stiehl what "amount of permanent disability" is a "result of [claimant's] back irrespective of the accident." When Dr. Stiehl answered unresponsively that claimant's "disability rating" for the "lumbosacral sprain" was about ten to fifteen percent, claimant's counsel "explained" that he was asking about claimant's disability based upon his "total back condition":

> Q: That's not what I asked you. I'm talking about his total back condition. Not just the lumbosacral sprain, but I'm talking about based upon his condition of his back with the arthritic changes and ... everything else that has taken place over his entire life time at work, do you have an opinion, based upon a reasonable medical certainty, as to what his permanent disability is from that?

This "explanation" is ambiguous. At first, claimant's counsel asked Dr. Stiehl for his rating of claimant's back "irrespective of the accident", but, in his explanation, counsel asked for a rating of claimant's "total back condition." It is not clear whether counsel was asking for a rating of the back without the injury or with the injury.

Dr. Stiehl's understanding of what was being asked is not made clear by his response. Apparently, he understood claimant's counsel to be asking his original question—what was his rating of claimant's back without injury. Dr. Stiehl responded:

> ... I'm not sure that I have any frame of reference to make such a statement. . . . I would estimate a person's permanent partial impairment from a back condition that he has, the arthritic changes, would be fifteen to twenty percent. . . .

Sensibly construed, Dr. Stiehl's testimony, at this point, was that claimant has ten to fifteen percent permanent partial disability due to his May 21 injury and fifteen to twenty percent permanent partial disability due to pre-existing degenerative changes.

The re-cross-examination of Dr. Stiehl continued:

Q: ... In your opinion, [claimant] can only lift twenty pounds, is that correct?

A: That's correct.

Q: He cannot do any bending, ... stooping ... climbing ... twisting, is that correct?

A: That's correct.

Q: It's your opinion, based upon reasonable medical certainty, that that disables a person by only twenty percent?

A: ... [I]f a person is a hod carrier, he is a hundred percent disabled. If he works as a bank teller, he may not be disabled much at all.

          *     *     *     *     *     *

Well, any type of white collar work, he may not be disabled at all.... What I have stated is that he is only capable of moderately light work.... It's likely that he could not go back to the type of work that he was doing.

Q: ... [I]f he had a white collar job, the odds are he wouldn't have the back that he has now?

A: That's correct, but he did have the job he's got now or he did up until May 21 of '86, and with that back being in that condition, built up over all these years, it's likely that he can't work at the level he may have been required.

Q: ... Is it your opinion that he has a permanent partial disability or permanent disability that would be total?

A: I would state only in the context that he be required solely to do heavy manual labor that he be totally disabled. It you say he has to do heavy manual labor, that's the only thing this person can do and he is unable to be retrained into another job that would allow him to do much less in terms of lifting, then I would say yes, he is totally disabled.

Q: Permanently totally disabled, is that correct?

A: Yes, from doing heavy manual labor.

■ The questions of claimant's counsel in this colloquy do not define precisely the information being sought. However, they cannot be reasonably interpreted as seeking Dr. Stiehl's evaluation of claimant's disability based solely on his May 21 injury. They may be reasonably interpreted as seeking Dr. Stiehl's evaluation of claimant's "back condition" either with or without the injury; and, Dr. Stiehl's response, in turn, may be interpreted as a response to the former inquiry—claimant is permanently disabled from doing heavy manual labor due to the degenerative arthritic condition of his back along with the May 21 injury. This response is not inconsistent with Dr. Stiehl's previous response that the lumbosacral sprain of May 21, by itself, caused claimant to be ten to fifteen percent permanently partially disabled. The Commission chose to interpret Dr. Stiehl's testimony this way, and we do not find this interpretation to be unreasonable.

Claimant chooses to interpret Dr. Stiehl's testimony differently and most favorably to him. Claimant contends Dr. Stiehl testified that claimant was ten to fifteen percent permanently partially disabled by the lumbosacral sprain of May 21 and that he was fifteen to twenty percent permanently partially disabled by his "total back condition". Claimant does not interpret these evaluations to be separate and distinct evaluations of separate and distinct physical conditions; rather, claimant interprets the latter evaluation as including the former, and, therefore, he concludes that Dr. Stiehl, in effect, attributed only five percent of claimant's disability to his back condition prior to the May 21 injury. Since his disability prior to the injury was only five percent "and probably none at all", claimant reasons, his incapacity to do heavy manual labor after the injury, as also testified to by Dr. Stiehl, must have been caused by the injury.

■ Although we believe claimant's interpretation to be strained and unreasonable, we need not demonstrate that here. Even if his interpretation were reasonable, it would not make the Commission's apparent interpretation of the same testimony unreasonable. We are bound to affirm the Commission's finding as long as the Com-

mission acted reasonably and not unreasonably. *E.g. Williams v. S.N. Long Warehouse Co.,* 426 S.W.2d 725, 733 (Mo.App. 1968).

Claimant also contends he was entitled to an award of 160 weeks temporary total disability rather than the 47³/₇ weeks awarded him by the Commission. We disagree.

■ Compensation must be paid an injured employee during the continuance of temporary total disability but not for more than four hundred weeks. Section 287.170 RSMo 1987. Awards of temporary total disability are intended to cover healing periods. *Williams v. Pillsbury Co.,* 694 S.W.2d 488, 489 (Mo.App.1955). These awards are payable until the employee is able to find some employment or until the employee's condition "has reached the point where further progress is not expected." *Id.*

■ Dr. Stiehl testified that claimant's "maximum treatment potential" was reached on May 11, 1987. The Commission interpreted "maximum treatment potential" to mean "maximum medical improvement" and awarded claimant temporary total disability up to this date—a period of time determined by the Commission to be 47³/₇ weeks.

Claimant contends that when Dr. Stiehl said claimant had reached his "maximum treatment potential", Dr. Stiehl meant that he "himself" could do nothing further for claimant. Again, the Commission's interpretation of Dr. Stiehl's language is reasonable, and, thus, we have no permissible grounds for substituting another interpretation for it. *Williams v. S.N. Long Warehouse Co., supra.*

Next, claimant contends that interest is due him on unpaid payments allegedly due him. In his Point, claimant contends that he is due the following interest: (1) 8 percent interest on unpaid permanent total disability payments allegedly due from the date of his injury; (2) 8 percent interest on unpaid temporary total disability payments allegedly due from July 9, 1986 to June 19, 1989; and (3) 8 percent interest on unpaid permanent partial disability allegedly due from June 20, 1989.

Claimant's contention that interest is due on unpaid permanent total and unpaid temporary total disability payments is based upon claimant's previous contentions that the Commission was incorrect in its findings of the kind and length of disability payments due. Since we have found the Commission's findings and awards were supported by the record, we need not address claimant's contentions of interest due on payments which, in fact and law, did not exist and, thus, could not become due.

■ Claimant also contends he is due interest on unpaid permanent partial disability payments. This contention has not been preserved nor properly presented for review. Claimant failed to raise the issue of interest due on the permanent partial disability payments before the Commission [1], and, thus, he is barred from raising that issue now. Issues not raised before the Commission may not be raised for the first time on appeal from the Commission. *Jones v. Concordia Publishing House,* 712 S.W.2d 60, 62 (Mo.App.1986); *see also Long v. City of Hannibal,* 670 S.W.2d 567, 570 (Mo.App.1984) and *Wuest v. Stix, Baer & Fuller,* 581 S.W.2d 934 (Mo.App.1979). Moreover, in the Argument portion of his brief, claimant neither develops nor explains why this claimed interest is due. Thus, even if he had properly preserved this issue, he has abandoned it on appeal. *Krug v. Abel,* 716 S.W.2d 17, 19 (Mo.App. 1986).

We have read the record and understand the relevant law. We are obliged, however, to remain impartial. We are not permitted to become a witting or unwitting adversary of UMSL, develop theories to support claimant's contentions for interest due, search the record for evidence to sup-

1. In his Application for Review to the Commission, claimant stated:
"There was no award for interest on the amount of unpaid Temporary Total Disability; 8% interest should have been awarded on the unpaid Temporary Total Disability from July 9, 1986."

port those theories and impose liability on UMSL without affording it an opportunity to challenge our strange conduct.

Claimant was treated by Dr. Peggy Taylor for his May 21 injury prior to Dr. Stiehl being selected by UMSL as the doctor to treat him. Claimant's request for an award of $420.00 to pay Dr. Taylor's bill was denied by the Commission. On appeal, UMSL concedes that this award should have been made.

Accordingly, we affirm the judgment of the Commission except for its denial of an award for Dr. Taylor's bill and remand this cause to the Commission to enter such an award along with proper interest on the award.

CARL R. GAERTNER, C.J., and SMITH, P.J., concur.