George **SCHUSTER**,
Claimant/Appellant/Cross–Respondent,

v.

**STATE of Missouri DIVISION OF EMPLOYMENT SECURITY**, Employer/Respondent/Cross–Appellant.

Nos. 72104, 72264.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 14, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 4, 1998.

Application for Transfer Denied
Aug. 25, 1998.

---

Frank J. Lahey, Jr., St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria Campbell, Scott R. Pool, Asst. Attys. Gen., Jefferson City, for respondent.

JAMES R. DOWD, Judge.

### I. Background

George Schuster ("Claimant") was an employee of the Missouri Division of Employment Security ("Employer"). On October 17, 1991, Claimant was severely injured in an automobile accident arising in the course and scope of his employment. The following day he was transferred by ambulance to St. Louis University Medical Center and lapsed into a coma. Claimant was placed on life support and confined to the Intensive Care Unit. Claimant was diagnosed as having suffered a dissection of the right internal carotid artery, resulting in a stroke, causing left side hemiplegia, a fracture of the proximal end of the left tibia and fibula, and various contusions and soft tissue injuries. Ultimately, Claimant regained consciousness and was transferred to St. Mary's Health Center, SSM Rehabilitation Center for long term therapy in January, 1992.

At SSM Rehabilitation Center, Claimant came under the care of Dr. Phuong Nguyen. Dr. Nguyen, a specialist in physical medicine and rehabilitation, supervised Claimant's medical care and therapy. Eventually, Claimant regained some of his speech and was able to comprehend his surroundings and condition.

On March 2, 1992, Claimant was transferred home for further therapy. Home nursing care services were provided to Claimant by Employer. These services were supervised by the Eastern Missouri Rehabilitation Advisory Management ("EMRAM"), a medical case management company. Two shifts of nursing services, comprised of Certified Nursing Assistants (CNAs), were provided in the Schusters' home twenty-one hours a day. These shifts continued until August, 1992.

After a period of time, Claimant was able to sit in a wheelchair and to stand and walk short distances within the home with the aid of a cane. In September, 1992, Claimant's home therapy ended, and he was enrolled as an outpatient for further therapy at SSM Rehabilitation Center. The outpatient therapy took place on weekdays. On days that Claimant went to outpatient therapy, EMRAM arranged for nursing services to be provided from approximately 8:00 p.m. to 8:00 a.m. for the purposes of preparing Claimant for bed, remaining with him during the night, and dressing and preparing him in the morning to go to his therapy sessions. On Saturdays and Sundays, however, Mrs. Schuster provided this care.

The outpatient therapy ended on February 10, 1993 when it was determined that Claimant would derive no additional benefit from it. The home nursing care provided by the CNAs was also discontinued at that time. Even though Mrs. Schuster had resumed full-time employment at the Division of Employment Security, she thereafter took over

the daily care of Claimant. The record contains conflicting evidence as to why the nursing care was terminated. Mrs. Schuster claims that Sarah Alsop, the head of EM-RAM, denied her repeated requests for continued nursing services. Ms. Alsop testified that she responded to Mrs. Schuster's specific requests for nursing services, but that she believed Mrs. Schuster and the nursing service provider had reached a mutual agreement to end nursing services.

Following his injury, Claimant continued to receive paychecks from Employer. Employer characterizes these payments as "sick leave pay" while Claimant characterizes them as his "regular pay." The checks were identical in every respect to Claimant's regular paychecks. It is unclear whether Claimant actually elected to receive sick leave pay or whether it was erroneously provided by Employer. Apparently Mrs. Schuster did not question why Claimant was still receiving his regular paychecks even though Claimant was no longer working, and instead accepted and cashed the checks. On December 31, 1992, Claimant retired and received no further checks from Employer.

On September 22, 1993, Claimant filed a claim for compensation. A hearing on this claim was held before the Division of Workers' Compensation on July 13, 1995. On October 17, 1995, the ALJ issued the following findings relevant to this appeal. The ALJ found that Employer was entitled to a credit for the payments it made to Claimant from October 17, 1991 to December 31, 1992 and that therefore Claimant was not entitled to temporary total disability benefits for that period. The ALJ also found that although Claimant was injured on October 17, 1991, he was not permanently totally disabled until November 24, 1993, the date Dr. Nguyen so stated in his report. The ALJ awarded Claimant interest on the total temporary and permanent total disability benefits in the amount of $3,923.07 for the period ending November 21, 1994. The ALJ determined that Claimant was not entitled to additional compensation on the basis of disfigurement pursuant to section 287.190(4) RSMo.* The ALJ further found that Employer was a self-

insured for the purposes of the Workers' Compensation Law and therefore denied Claimant's request that his future permanent total disability benefits be commuted. The ALJ concluded that Mrs. Schuster was entitled to reimbursement for nursing services she provided for Claimant. The ALJ ordered Employer to provide future nursing care for nine hours each day that Mrs. Schuster works, and to reimburse Claimant for the time Mrs. Schuster provides nursing care.

On appeal, the Labor and Industrial Relations Commission ("Commission") affirmed the findings of the ALJ in part and reversed in part. Although the Commission agreed with the ALJ that Employer was an authorized self-insurer and that commutation of Claimant's award should not be ordered, it provided alternate reasons for its decision. According to the Commission, allowing a commutation would not further the purpose of section 287.280 RSMo because there is no danger that state employees will not be compensated in the same manner in which wages are ordinarily paid. The Commission also believed that applying the penalty provision in section 287.280 would be inappropriate because Employer attempted to comply with the law. With respect to the interest due on the award, the Commission reversed the ALJ's finding that Employer was liable for interest from January 1, 1993 to November 21, 1994. The Commission concluded that the state is not responsible for interest during that period because the award was issued after November 21, 1994. In all other respects relevant to this appeal, the Commission adopted the decision of the ALJ.

In the present appeal, Claimant contends that the Commission erred in: (1) finding that he was not permanently and totally disabled until November 24, 1993; (2) finding that he was not entitled to disability payments from the date of the accident until January 1, 1993; (3) denying interest on his total temporary disability award for the period of January 1, 1993 to November 21, 1994; (4) finding that he was not disfigured as a result of the injuries he sustained in the accident; (5) finding that Employer was an

---

* All statutory references are to RSMo 1994 unless     otherwise specified.

authorized self-insured; and (6) not commuting his award of compensation. Employer raises two points on its cross-appeal: (1) the Commission erred in finding that Mrs. Schuster was entitled to reimbursement for nursing services she provided to Claimant from February 11, 1993 through September 29, 1995; and (2) the Commission's award of future nursing services violates the Workers' Compensation Law by depriving the state of its right to select the licensed health care provider. We affirm in part and reverse and remand in part.

## II. Standard of Review

The court in *Cook v. Sunnen Products Corp.*, 937 S.W.2d 221 (Mo.App. E.D.1996) set forth the standard governing appellate review of a Commission decision:

> [T]his court can disturb the Commission's decision only if there is no competent and substantial evidence to support the Commission's award or, in the alternative, such evidence is clearly contrary to the overwhelming weight of the evidence. If this does not exist, then we must affirm. In reviewing the decision, we must examine the entire record. In so doing, we must liberally construe all provisions of the Workers' Compensation Act to resolve all doubts in favor of the employee.

*Cook*, 937 S.W.2d at 224. When an issue decided by the Commission involves a question of law, appellate review is *de novo*. *Id.* (citing *West v. Posten Construction Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991)).

## III. Claimant's Appeal

### A. Date of Disability

■ Claimant alleges that the Commission's decision that he is only entitled to total permanent disability benefits beginning on November 24, 1993 is a question of law, and that it is clearly erroneous. We hold that the determination of the date on which an employee becomes permanently and totally disabled is a question of fact, and the burden of establishing permanent and total disability is upon the Claimant. *See Robinson v. St. Louis Sch. Dist.*, 928 S.W.2d 410, 412 (Mo. App. E.D.1996).

■ Benefits for temporary total disability are paid during the "healing period." *See, e.g., Vinson v. Curators of Univ. of Missouri*, 822 S.W.2d 504, 508 (Mo.App. E.D. 1991); *Phelps v. Jeff Wolk Constr. Co.*, 803 S.W.2d 641, 645 (Mo.App. E.D.1991); *Williams v. Pillsbury Co.*, 694 S.W.2d 488, 489 (Mo.App. E.D.1985). Temporary total disability compensation is paid until the employee can return to work, his condition stabilizes, or he has reached a point where further progress is not expected. *Minnick v. South Metro Fire Protection Dist.*, 926 S.W.2d 906, 909 (Mo.App. W.D.1996); *Vinson*, 822 S.W.2d at 508. Permanent disability is determined and provided for only after temporary disability compensation is discontinued.

At trial, Mrs. Schuster testified that for a few years she held out the hope that Claimant's condition would continue to improve and that Claimant would eventually be able to return to work. Although Dr. Nguyen testified by deposition that in his opinion Claimant was one hundred percent disabled, he did not express any opinion in his deposition as to the exact date on which Claimant became permanently totally disabled. The earliest date as to which a medical expert made a determination that Claimant was permanently totally disabled was on November 24, 1993 when Dr. Nguyen filed his report. While Claimant indeed may have been permanently totally disabled before that date, he failed to satisfy his burden of proof on this issue by providing competent evidence as to the date on which he became permanently and totally disabled. Point denied.

### B. Date of Commencement of Benefits

■ Claimant next argues that the Commission erred in finding that he was not entitled to total temporary disability benefits from the date of his accident to December 31, 1992. Claimant contends that he is entitled to disability benefits for this period because Employer only paid him his salary, and not workers' compensation, during this period.

Claimant cites several recent cases in support of his argument. In *Cook v. Sunnen Products Corp.*, the court held that the employer was not entitled to a credit against its

workers' compensation liability despite paying its employee his full salary during the period of his temporary total disability. 937 S.W.2d at 226–27. In *Campbell v. Citicorp Mortgage, Inc.*, the court held that the employer was not entitled to credit sick leave payments it made to an employee against its workers' compensation liability. 924 S.W.2d 323, 325 (Mo.App. E.D.1996). Similarly, the court in *Shaffer v. St. John's Regional Health Center* held that an employer's payment of vacation pay and sick pay to an employee for a work-related injury were not payments "pursuant to the Workers' Compensation Act" and therefore did not preclude an award of temporary total disability benefits. 943 S.W.2d 803, 808 (Mo.App. S.D. 1997).

Employer contends that because it paid Claimant sick leave pay pursuant to an administrative rule while he was totally temporarily disabled, it is entitled to credit this amount against its workers' compensation liability. The administrative rule governing sick leave for state employees is 1 CSR 20–5.020(2). The rule defines sick leave as "a period in which the employee is incapacitated for the performance of assigned duties by sickness or injury ... or periods of time required for medical, surgical, dental or optical examination or treatment." 1 CSR 20–5.020(2)(A). In lieu of temporary disability benefits, the rule allows an employee to elect to receive accrued sick leave pay:

> Any employee who is entitled to Workers' Compensation under Chapter 287, RSMo may elect to receive accrued sick leave pay due under these rules in lieu of compensation under sections 287.170 and 287.180, RSMo for the period the sick leave pay is received. Workers' Compensation shall not be due the employee for any period for which sick leave pay has been received, but the receipt of sick leave pay shall not affect the employee's right to Workers' Compensation for any period beyond that for which sick leave pay has been received.

1 CSR 20–5.020(2)(A)(1).

This rule plainly violates the Workers' Compensation Law. Under Chapter 287, employers are prohibited from crediting against their liability for workers' compensation "wages or such pay benefits paid to the employee or his dependents on account of the injury ... except as provided in Section 287.270." Sec. 287.160(5) RSMo. Section 287.270 specifies that "savings or insurance of the injured employee" and "any benefits derived from any other sources other than the employer or the employer's insurer for liability under this chapter," may not be considered in determining an employer's liability for workers' compensation. Sec. 287.270 RSMo.

Contrary to Employer's assertion, allowing Claimant to receive both sick leave pay and temporary total disability benefits is not inequitable. Sick leave pay is a benefit accumulated through employment and is designed to compensate employees for short-term absences from work due to illness. On the other hand, workers' compensation is designed to compensate employees for longer absences from work due to work-related injuries. Denying Claimant's request for total temporary disability benefits would be inequitable.

### C. Interest Due on Benefits

■ Claimant next contends that the Commission erred in finding that he was not entitled to interest on his disability benefits for the period between January 1, 1993 and November 21, 1994. The Commission concluded that the state cannot be liable for interest on disability benefits prior to the issuance of an award. The Commission based its conclusion on section 287.160(3), which reads in relevant part: "The state of Missouri or any of its political subdivisions, as an employer, is liable for any such interest assessed against it for failure to promptly pay on any award issued against it under this chapter." We agree with the Commission's interpretation of section 287.160(3). The plain and ordinary meaning of that section's language contemplates the pre-existence of an award before the state can be held liable for interest payments on the award. Point denied.

### D. Disfigurement

■ In his fourth point, Claimant challenges the Commission's finding that he did

not sustain disfigurement as a result of his accident. According to section 287.190(4), additional compensation may be awarded if an employee is seriously and permanently disfigured about the head, neck, hands, or arms. Claimant did not appear personally at the hearing and submitted photographs to establish his claim for disfigurement. After examining the photographs, the ALJ concluded that they did not show any serious disfigurement of Claimant's head, neck, hands or arms. The ALJ concluded that Claimant's difficulties ambulating do not constitute serious disfigurement because his injuries "do not exhibit any scarring, amputation, or deformity to the head, neck, hands or arms." While Claimant certainly must have difficulty walking and standing due to his injuries, Claimant cites and we find no cases indicating that the ALJ misinterpreted the statute. Point denied.

### E. Self–Insurer Status

■ In his next point, Claimant argues that the Commission erred in finding that Employer was an authorized self-insurer pursuant to section 287.280(1). A threshold issue is whether the state is even subject to the requirements of that section. We hold that the state is not required to post a security bond to qualify as a self-insurer because requiring the state to post a security bond would amount to a useless act.

Our conclusion is based on Employer's status as a subdivision of the state and the enforcement mechanism provided in the bond agreement. According to Claimant, Employer must post a security bond with the Division of Workers' Compensation before it may become an authorized self-insurer. The practical effect of Claimant's argument is that one subdivision of the state must post a security bond with another subdivision of the state. So, in essence, the state must post a bond with itself. This untenable result is supported by the language of the bond itself. The bond runs from a principal and surety "unto the State of Missouri for the use and benefit of the employees of the principal." Thus, the bond would be from the principal (in this case, the State of Missouri) to the State of Missouri.

In addition, the Attorney General is responsible for enforcing the bond "in the name of the people of the State of Missouri." Thus, to enforce the bond the state must sue itself. As such a bond accomplishes nothing, we decline to require the state to post a security bond to qualify as a self-insurer under the Workers' Compensation Law. *See Darr v. Structural Systems, Inc.*, 747 S.W.2d 690, 694 (Mo.App. E.D.1988) ("[T]he law does not require a party to do a useless act.").

### F. Commutation of Benefits

Because we find that the state is an authorized self-insurer, Claimant's request that his benefit payments be commuted pursuant to section 287.280 is denied.

### IV. Employer's Cross–Appeal

### A. Reimbursement for Wife's Nursing Services

■ Employer contends that the Commission erred in finding that Claimant was entitled to reimbursement for nursing services provided by his wife between February 11, 1993 through September 29, 1995. Employer argues that there is no competent or substantial evidence that the state was notified of the need for nursing care or that there was a demand for such care which the state failed to meet. We review the evidence in the light most favorable to the award.

In *Fitzgerald v. Meyer*, 820 S.W.2d 633 (Mo.App. E.D.1991), the court recognized that a spouse could be reimbursed for the nursing care rendered to a claimant if the employer had notice of the need for nursing care or a demand for such care was made, and the employer refused, failed, or neglected to provide the treatment. *Id.* at 635.

In determining whether Employer had notice of Claimant's need for nursing care and failed to provide necessary care, the ALJ resolved the conflicts in the evidence in favor of Claimant, and ruled that Claimant was entitled to reimbursement for past nursing care provided by his wife. The ALJ found as follows:

In this case, it is clear that Employer provided nursing services to Claimant from September, 1992, through February

10, 1993, on a Monday through Friday basis for 12 hours each day. Employer obviously was aware of Claimant's need for such nursing services, otherwise same would not have been provided for 60 hours each week. There is some conflict in the evidence as to why Claimant's wife was caring for him on the weekends during this period. Mrs. Schuster testified that she asked the Employer's representative (EM-RAM) to provide nursing care on weekends. Representatives of the Employer testified that they were unaware of any request on behalf of Claimant to be provided with nursing services during the weekend, and that Mrs. Schuster had indicated that she enjoyed the solitude of the weekends (without nursing personnel physically present in the home) as "our time together". Both scenarios are equally plausible, and I find it impossible to determine which is closer to the truth....

Mrs. Schuster testified that she has been required to care for her husband daily since February 11, 1993 to the present. Again, there is a discrepancy as to why Mrs. Schuster was the care provider during this period. Mrs. Schuster testified that she continuously requested nursing services for her husband, but that Employer never provided those services after February 10, 1993 (except on one specific occasion when Mrs. Schuster was required to be out of town on business.) Sarah Alsop testified that Mrs. Schuster requested termination of the nursing services. Ms. Alsop testified that Mrs. Schuster indicated that the nurses aides were creating a problem and that she would just as soon not have them in her home. I have difficulty believing that Mrs. Schuster would have specifically refused nursing help, as she was working 40 hours at her regular job in addition to the nursing services to which she was committing herself by the refusal. There is certainly no question that the Employer had notice of the need for such nursing care.

The Commission affirmed the ALJ's findings on this issue.

When the resolution of an issue hinges on the credibility of witnesses or the weight given to certain evidence, the scope of our review is significantly curtailed. "The weight to be given evidence rests with the Commission and it alone determines the credibility of witnesses. Where competent evidence is conflicting, resolution is for the Commission and its choice is binding upon this court." *Reeves v. Midwestern Mortgage Co.*, 929 S.W.2d 293, 295 (Mo.App. E.D.1996). Additionally, any doubts as to the right of an employee to recover compensation are to be resolved in favor of the employee. *Wolfgeher v. Wagner Cartage Serv., Inc.*, 646 S.W.2d 781, 783 (Mo. banc 1983).

Given the conflicting testimony, we decline to reverse the ALJ's findings (as adopted by the Commission) on this issue. The ALJ was in the best position to evaluate and resolve these conflicts, and the Commission's decision is supported by competent and substantial evidence which is not clearly contrary to the overwhelming weight of the evidence. We therefore uphold the Commission's decision that Claimant is entitled to reimbursement for nursing services provided by his wife. Point denied.

### B. Award of Future Nursing Services

Employer urges us to reverse the portion of the Commission's award that designates the future nursing care providers as Mrs. Schuster and, when Mrs. Schuster is at work, a CNA or homemaker. According to Employer, the Commission's award of future nursing services violates the state's right as an employer by denying the state the opportunity to select the licensed health care provider as provided in section 287.140.10. We disagree.

In *Balsamo v. Fisher Body Division–General Motors Corp.*, 481 S.W.2d 536 (Mo.App. 1972), the court upheld a Commission award which allowed the claimant to select his wife as his nursing care provider. As in the present case, the employer in *Balsamo* objected to the Commission forcing it to accept the nurse of employee's choice, claiming that under section 287.140 it had a right to select the care required by the employee. The court in *Balsamo* disagreed, holding that the employer had waived its right to select the nursing care for the employee:

[W]e see no valid basis on which to uphold the employer's wish to require the employee to discontinue the nursing care he has chosen, and accept whatever is belatedly provided by the employer. Since the employer has been aware of the employee's need for at least some nursing care since 1967, and has heretofore not offered to provide it, we conclude that he has waived his right under the statute.

*Balsamo,* 481 S.W.2d at 539.

Viewing the evidence in the light most favorable to the final award of the Commission, we find the reasoning of *Balsamo* particularly applicable to this case. While it is undisputed that Employer did provide nursing care to Claimant for more than one year after his injury, Employer stopped providing care after February 10, 1993 even though Claimant was still in need of continual care. Employer's failure to provide basic nursing care despite Claimant's obvious need is grounds for waiver of its rights under section 287.140.10. Although conflicting evidence exists with respect to this issue, the Commission ruled in favor of Claimant. The Commission's decision is supported by competent and substantial evidence which is not clearly contrary to the overwhelming weight of the evidence. We therefore affirm the Commission's award of future nursing services. Point denied.

## V. Conclusion

Accordingly, we affirm that part of the Commission's decision that: (1) Claimant was not totally permanently disabled until November 24, 1993; (2) Employer is not liable for interest on Claimant's disability payments between January 1, 1993 and November 21, 1994; (3) Claimant is not disfigured within the meaning of the Workers' Compensation Law; (4) Employer is an authorized self-insured; (5) Claimant is not entitled to commutation of his disability benefits; (6) Claimant is entitled to reimbursement for nursing services provided by his wife; and (7) Employer waived its right to select future nursing care providers for Claimant. We reverse that part of the Commission's decision denying Claimant's request for total temporary disability benefits between October 18, 1991 and December 31, 1992. The case is remanded to the Commission to determine the additional relief due Claimant and to enter judgment consistent with this opinion.

CRANE, P.J., and RHODES RUSSELL, J., concur.