NO. 12-02-00087-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


PAUL LEWIS OWENS,
§
 APPEAL FROM THE 

APPELLANT


V.
§
 COUNTY COURT AT LAW #1


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 Paul Lewis Owens ("Appellant") was convicted of criminal trespass after a jury trial. The
trial court sentenced him to 120 days of confinement in the Smith County Jail. Appellant contends
on appeal that the evidence was legally and factually insufficient to support the conviction. We
affirm.


Background

 Appellant was frequently at the Royal Crest Apartments where his friend, Ms. Terry Coble
("Coble"), lived. Their relationship involved a number of loud disputes, and on June 2, 2001, after
an especially loud, public argument between Appellant and Coble, the apartment manager instructed
that Appellant be forbidden to re-enter the property of the Royal Crest Apartments. A Smith County
Deputy Sheriff, Michael Lunsford ("Lunsford"), who lived at the apartment complex, and a Tyler
Police Officer called to the scene told Appellant that he was not to come back on the property of the
Royal Crest Apartments. 

 On September 16, 2001, Coble's neighbor noticed Coble's car in the parking lot of the Royal
Crest Apartments with the driver's side door open, and her keys and purse on the floor of the car. 
Appellant's truck was parked next to Coble's car. Concerned about Coble, the neighbor notified the
apartment manager who asked Lunsford to check on Coble. After he examined the car and noticed
Appellant's truck, Lunsford, who was aware of the couple's numerous heated arguments, went to
Coble's apartment to check on her. When no one answered Coble's door after Lunsford's extended
knocking and calling for Coble, Lunsford grew increasingly concerned about Coble's welfare. He
called the Tyler Police Department, who dispatched two officers. Together they entered the
apartment, continuing to identify themselves as peace officers and calling for Coble. In response,
Coble came out of a bedroom. The female police officer escorted her from the apartment to verify
that she was safe. The police also stated they were concerned that a person who had been ordered
from the property may be on the property and asked Coble if they could check the apartment. Coble
gave permission to search the apartment and the officers found Appellant in the bedroom. Appellant
acknowledged that he knew he was forbidden to be on the property, and was arrested for criminal
trespass.


Legal Sufficiency

 In reviewing a legal sufficiency question, we must view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim.
App. 1998); Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). The trier of fact, here,
the jury, is the exclusive judge of the credibility of witnesses and of the weight to be given their
testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Williams v. State, 692
S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury is entitled to draw reasonable inferences from
the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.-Corpus Christi 1988, pet.
ref'd). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the
jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The evidence is measured for
sufficiency by looking at the indictment as incorporated in the court's charge to the jury. Fisher v.
State, 887 S.W.2d 49, 53 (Tex. Crim. App. 1994)(op. on reh'g).

 The offense of criminal trespass, as it relates to this case, is defined as follows:


 (a) A person commits an offense if he enters or remains on property, including an aircraft, of
another without effective consent or he enters and remains in the building of another without
effective consent and he:


 had notice that entry was forbidden;


 . . . .

 (b) For purposes of this section:

 . . . .

 (2) "Notice" means:


 oral or written communication by the owner or someone with apparent
authority to act for the owner;


 . . . .



Tex. Pen. Code Ann. § 30.05 (a)(1), (b)(2)(A) (West 2002). Thus, the elements of the offense of
criminal trespass are "(1) a person, (2) without effective consent, (3) enters or remains on the
property or in a building of another, (4) knowingly, intentionally, or recklessly, (5) when he had
notice that entry was forbidden or received notice to depart and failed to do so." Bader v. State, 15
S.W.3d 599, 606 (Tex. App.-Austin 2000, pet. ref'd). Significant to our analysis is that "ownership
is not an element of criminal trespass. Section 30.05 requires only that the actor remained on
property of another after receiving notice to depart." Langston v. State, 855 S.W.2d 718, 721 (Tex.
Crim. App. 1993)(emphasis in original). 

 The information charging Appellant with criminal trespass alleged, in pertinent part, that on
the 16th day of September 2001, the Appellant "did, then and there intentionally and knowingly
enter property of another, namely MICHAEL LUNSFORD, without the effective consent of
MICHAEL LUNSFORD the said owner, and the said defendant had notice that the entry was
forbidden."

 At trial, both the apartment manager and Lunsford testified that, on June 2, 2001, Appellant
was given oral notice that he was forbidden to come onto the property of the apartment complex,
which ban included the parking lot, the public areas, and the individual apartments. The apartment
manager testified that the Royal Crest Apartments was private property, that she was the manager
of the property, and as such, she had control over the property. Further, she delegated authority to
Lunsford to exclude people from the property, which she referred to as "warning" people off the
property. She also testified that Appellant, as a non-resident, had no rights to use or enjoy the
property. Further, she testified that, by virtue of the lease signed by the residents, her authority
overrides the authority of a lessee to invite someone barred from the apartment complex. The
apartment manager also testified that she had explained to Coble that Coble could not permit
Appellant to come onto the property or into her apartment.

 Lunsford detailed his June 2 meeting with Appellant banning him from all of the Royal Crest
Apartments complex, including Coble's apartment. Lunsford testified that, on September 16, when
he and the two Tyler police officers went to Coble's apartment and found Appellant in the bedroom,
Appellant admitted he understood that he was not supposed to be there because he had been banned
from the property.

 Jeffrey Callaway, a Tyler Police Officer, testified that, before arresting Appellant for criminal
trespass on September 16, 2001, he checked the police computer for the entry made on June 2, 2001
by the previous officer when Appellant had been banned from the apartment complex and verified
the officer had previously given Appellant the warning. 

 An apartment manager has a superior right to the property against a non-tenant. Further, an
apartment manager can delegate to security personnel or other agents the authority to exclude people
from the property. State v. Jackson, 849 S.W.2d 444, 446 (Tex. App.-San Antonio 1993, no pet.);
see also Restatement (Second) of Agency §§ 17, 26, 69 (1958).

 The evidence established every allegation of the information except that Officer Lunsford
was "the said owner" of the Royal Crest Apartments. The issue is whether that allegation in the
information, that Lunsford was "the said owner," was a material allegation. There is no evidence
that Lunsford was the owner of the Royal Crest Apartments; indeed, the evidence established that
a corporation owned the property and that Lunsford was furnished an apartment in exchange for
providing security at the apartment complex. Therefore, Lunsford's alleged actual ownership was
not established by the evidence. 

 In evaluating whether the allegation that Lunsford was the "owner" of the property is a
material allegation, we are guided by the court of criminal appeals which has stated that the State's
proof necessary to support a conviction is measured by the hypothetically correct jury charge. Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). For a given case, such a jury charge would
be


 one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase
the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried. . . . The standard we formulate
today ensures that a judgment of acquittal is reserved for those situations in which there is an actual
failure in the State's proof of the crime rather than a mere error in the jury charge submitted.



Id. The court of criminal appeals has further explained that



 [a] variance between the wording of an indictment and the evidence presented at trial is fatal only if
"it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance,
we must determine whether the indictment, as written, informed the defendant of the charge against
him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under
the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for
the same crime.



Gollihar v. State, 46 S.W.2d 243, 257 (Tex. Crim. App. 2001). The court concluded that "when
faced with a sufficiency of the evidence claim based upon a variance between the indictment and
the proof, only a 'material' variance will render the evidence insufficient." Id.

 The allegation that Lunsford was the owner of the property neither deprived Appellant of 
sufficient information to allow him to prepare an adequate defense at trial nor subjected him to a
possible double prosecution for this offense. Consequently, the allegation was not material and the
failure to establish that Lunsford was the "owner" of the property was not a material variance.

 The uncontroverted evidence establishes that Appellant had been given notice that entry to
the Royal Apartments was forbidden, and that Appellant was subsequently found on the property. 
Therefore, we hold that the evidence is legally sufficient to support the jury finding that Appellant
committed the act of criminal trespass. Appellant's issue as to legal sufficiency is overruled.


Factual Sufficiency

 When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). In conducting our analysis, our duty is to examine the trier of fact's weighing of the
evidence. Scott v. State, 934 S.W.2d 396, 398 (Tex. App.-Dallas 1996, no pet.). We consider all
the evidence in the record related to an appellant's sufficiency challenge, comparing the weight of
the evidence that tends to prove guilt with the evidence that tends to disprove it. See Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); see also Fuentes v. State, 991 S.W.2d 267,
271 (Tex. Crim. App. 1999). Because we consider all the evidence in conducting a factual
sufficiency review, we necessarily consider any reasonable alternative hypothesis raised by the
evidence. Richardson v. State, 972 S.W.2d 384, 387 (Tex. App.-Dallas 1998, no pet.). However,
the mere existence of a reasonable hypothesis does not render the evidence factually insufficient. 
Id.

 Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain,
958 S.W.2d at 407. However, absolute deference is not the standard. Johnson v. State, 23 S.W.
3d 1, 8 (Tex. Crim. App. 2000). The degree of deference we give to jury findings must be
proportionate with the facts which we can accurately glean from the trial record. Id. Our factual
sufficiency analysis can consider only those few matters bearing on credibility that can be fully
determined from the cold appellate record. Id. Unless the appellate record before us reveals that
a different result is appropriate, we must defer to the jury's determination concerning what weight
to give contradictory testimonial evidence. Id. This is because resolution often turns on an
evaluation of credibility and demeanor, and the jury was in attendance when the testimony was
delivered. Id. We then accord this evidence appropriate consideration in the context of our overall
analysis. Id. at 8-9. A factual sufficiency review encompasses the formulations used in both civil
and criminal cases. Id. at 11. This means that the evidence can be factually insufficient if (1) it is
so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great
weight and preponderance of the available evidence. Id. The court of criminal appeals in Johnson
further states:


 [T]he complete and correct standard a reviewing court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, or the proof of guilt, although adequate taken
alone, is greatly outweighed by contrary proof.



Id. Applying these guidelines to the evidence, we hold that the evidence was factually sufficient for
the jury to find Appellant guilty as charged. Appellant's issue as to factual sufficiency is overruled.


Conclusion

 There being legally and factually sufficient evidence to support the verdict, the judgment of
the trial court is affirmed.


 SAM GRIFFITH 

 Justice



Opinion delivered June 11, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.





























(DO NOT PUBLISH)