**Larry Donnell DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–01–00144–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 14, 2002.

Decided Dec. 10, 2002.

Ebb B. Mobley, Longview, for appellant.

Andrea M. Thompson, Appellate Assistant District Attorney, F. Alfonso Charles, Assistant District Attorney, Longview, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Larry Donnell Davis[1] appeals from his conviction by a jury for the offense of possession of a firearm by a felon. The court assessed his punishment at eight years' imprisonment.

Larry contends his conviction should be reversed because, through no fault of his own, he was unable to obtain a complete reporter's record, and because the evidence is factually and legally insufficient to support the conviction.

---

1. Three individuals with the surname of Davis are identified in this opinion. The given names of these persons will be used to distinguish among them.

We first address the problem with the record.[2] When we initially received the reporter's record, the voir dire of the venire was not included. The court reporter, Sandi Turner, transmitted a letter to this Court in which she stated she could not prepare a complete and accurate transcription of the jury voir dire in this trial because of a simultaneous physical malfunction in her manual transcriber and her computer system, and because her audiotape backup did not pick up all portions of the voir dire.[3] She stated that she had sought the assistance of the manufacturer of the software used for the computer program in retrieving the data and that it was unsuccessful in retrieving the material. She stated that only part of her manual stenographic notes were readable.

We abated the appeal to the trial court with directions to conduct a full adversarial hearing to determine the state of the reporter's notes and whether the voir dire could be completely and accurately transcribed. Pursuant to our order, the trial court conducted a hearing at which Turner brought her equipment and materials, and at which she testified. The court then entered findings and conclusions about the state of the reporter's record.

The record from that hearing and the findings are now before this Court. The trial court found that the court reporter's stenograph machine malfunctioned in such a way that the manual paper printing of her keystrokes was only partially legible and that not all of the jurors' responses during voir dire could be heard on the audiotape of the proceedings. Her keystrokes on the machine were also, however, recorded onto a computer diskette. The reporter stated that she had, despite seeking assistance, been unable to retrieve the voir dire information from the diskette.

The trial court directed Shelly Davis, another court reporter, to take Turner's paper notes, computer diskette, and the audiotape, and attempt to complete a record of the voir dire. The court's findings reflect that, ten days later, Shelly reported to the court that she had been able to recover the computer files from Turner's original diskette and that she was able to use that record, in conjunction with the paper notes, to compile a complete voir dire record. In conclusion, based on the information provided by Shelly, the court found she was able to make a complete and accurate transcription of the voir dire proceeding, which it then submitted to this Court. Based on the trial court's determination, we conclude that a complete record has been presented to this Court.

Larry next contends the evidence is legally and factually insufficient to support the conviction.

 In our review of the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In determining the factual sufficiency of the evi-

---

**2.** The controlling authority in our review of an incomplete record is *Issac v. State*, 989 S.W.2d 754, 757 (Tex.Crim.App.1999).

**3.** The reporter is responsible for preparing and timely filing a reporter's record, and for certifying it is a true and correct transcription of all portions of evidence and other proceed-

ings requested. Tex.R.App. P. 35.3(b); Uniform Format Manual for Texas Court Reporters, § 12.1, Fig. 5, eff. May 1, 1999. Under these circumstances, the court reporter acted properly in informing this Court her notes could not provide a complete and correct transcription of the proceedings.

dence to establish the elements of the offense, we view all the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 7.

The evidence shows that, during the early morning hours of a night in May 2001, Longview police officer Lisa Chatterton responded to a call concerning a disturbance at a one-bedroom duplex. Chatterton testified that on arrival she observed Larry and Marilyn Davis arguing loudly just past a screen door inside the duplex. Chatterton entered the residence and separated the two individuals who were arguing. She observed another individual, a male, sitting on a sofa. Chatterton asked Marilyn to go outside the house onto a porch and told Larry to remain inside. Chatterton went outside with Marilyn and testified that, once she and Marilyn were out of the house, Larry latched the screen door and closed the inside door and locked it. Chatterton testified that a few seconds later she heard a loud gunshot from inside the house. She and Marilyn quickly retreated to the street, where another police officer had arrived. Chatterton reported the gunshot over the police radio, which prompted more officers to come to the scene, where they set up a perimeter around the house. Larry did not leave the house, and eventually a SWAT team was called to the scene. After failed efforts to make contact with Larry by telephone, a chemical agent was fired into the house. Larry and another female then came out of the house. Chatterton testified she did not know what happened to the person she observed earlier sitting on the sofa. The SWAT team then checked the house and found a shotgun containing a single, fired hull under the bed.

■ Larry contends the evidence is insufficient because it does not show he "possessed" the weapon. To establish unlawful possession of a firearm by a felon, the State must show the accused was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement from supervision under community supervision, parole, or mandatory supervision, whichever date is later. TEX. PEN.CODE ANN. § 46.04(a)(1) (Vernon Supp.2003); *Martinez v. State*, 986 S.W.2d 779, 780 (Tex.App.-Dallas 1999, no pet.). Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. TEX. PEN.CODE ANN. § 6.01(b) (Vernon 1994). To support a conviction for possession of a firearm, the state must show (1) that the accused exercised actual care, control, or custody of the firearm, (2) that the accused was conscious of his or her connection with it, and (3) that he or she possessed the firearm knowingly or intentionally. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995); *Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.-Texarkana 1998, pet. ref'd).

■ The evidence used to satisfy these elements may be direct or circumstantial. *See Brown*, 911 S.W.2d at 747; *Jones*, 963 S.W.2d at 830. Whether direct or circumstantial evidence is used, the state must establish that the accused's connection with the firearm was more than just fortuitous. *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex.App.-Texarkana 2001, pet. ref'd); *see Brown*, 911 S.W.2d at 747; *Jones*, 963 S.W.2d at 830. However, when the firearm is not found on the accused's person or is not in the accused's exclusive possession, additional facts must affirmatively link the accused to the contraband. *Nguyen*, 54 S.W.3d at 53; *see Jones*, 963 S.W.2d at 830. The affirmative links typi-

cally are shown by the existence of evidence about the circumstances in which the item is found and the logical force that evidence has in combination.

Relevant factors discussed by courts as establishing affirmative links include such matters as whether: (1) the contraband was in a place owned by the accused; (2) the contraband was conveniently accessible to the accused; (3) the contraband was in plain view; (4) the contraband was found in an enclosed space; (5) the conduct of the accused indicated a consciousness of guilt; (6) the accused had a special relationship to the contraband; and (7) affirmative statements connect the accused to the contraband. *Corpus v. State*, 30 S.W.3d 35, 38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

In this case, the duplex was rented by Larry. He lived there, and the lease indicates he had done so for nearly a year before this incident. The shotgun was found under the bed in the one-bedroom residence. This evidence, together with the testimony of Chatterton that she heard the shotgun blast shortly after she observed Larry and Marilyn in a heated argument and only a few seconds after she observed Larry latch the screen door and close and lock the inside door, was legally sufficient for the jury to reasonably conclude Larry was in possession of the firearm as alleged.

Under a factual sufficiency review, we also look to other evidence to see if the verdict is against the overwhelming weight of the evidence. In this case, there was no evidence to show the firearm belonged to any other person or to support any alternative theory about the possession of the firearm. The evidence is thus also factually sufficient to support the verdict.

Larry next contends the trial court erred by overruling his motion to suppress the firearm which was obtained when the SWAT team went through the house. A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). At the suppression hearing, Detective Seth Vanover testified he had obtained written consent to search the house from Marilyn. He testified she had informed him she lived there, and thus he presumed she had authority to give consent. At the hearing, Marilyn testified she only lived at the house on weekends. She is not Larry's wife.[4] Under these facts, it is arguable she does not have actual authority to consent to a search. That is not, however, the operative question, because even when the facts do not support a finding of actual authority, a search is reasonable if the consent-giver apparently has actual authority. *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Corea v. State*, 52 S.W.3d 311, 317 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

Based on Marilyn's statements at the scene, it was reasonable for the officer to conclude she could consent to the search. Thus, the trial court did not abuse its discretion by overruling the motion to suppress.

Larry next contends the trial court erred by refusing to allow counsel to review an offense report used by a testifying officer during the pretrial suppression hearing to refresh her memory. While Chatterton was testifying, she stated that she had made an offense report and that she had refreshed her memory with the report before testifying. Counsel request-

---

4. The record indicates that, at the time of this incident, she was married to one of Larry's cousins, but was spending her weekends with Larry.

ed that the State provide a copy of the report. The trial court stated that, "You're not entitled to it at this stage of the proceedings," and counsel asked that a copy be made part of the record. The State then asked the trial court to seal the report, and the trial court did so.

This Court has previously held in *Powell v. State*, 5 S.W.3d 369, 380 (Tex.App.-Texarkana 1999, pet. ref'd), in addressing this same question, that TEX.R. EVID. 612 requires production of material used to refresh the witness' memory during *any* hearing, not merely during a trial in front of a jury.[5] Our decision in that case controls, as does the plain language of the rule. Counsel was entitled to review that document, and the trial court committed error by refusing to allow him to do so.

The State suggests this case differs from *Powell* because in this case the trial court immediately ordered the document placed under seal. The State is apparently relying on the following language in *Powell* for support of its position that, if a writing is placed under seal, it need not be provided to opposing counsel even if a witness has used it to refresh his or her memory:

> [A]lthough the trial court indicated that it would place Benson's offense report under seal, it appears that it was not sealed, because it has been openly included in the appellate record. The State contends that because the report is included in the record, Powell failed to preserve error because he did not inspect the report and allege his specific harm. In light of our findings, it is not necessary for us to determine whether Powell preserved error, but we note that it is unclear whether Powell knew he had an opportunity to inspect the report.

*Powell,* 5 S.W.3d at 382.

In *Powell,* we simply stated that, although there was a mention of placing the document under seal, that had not occurred. We did not approve of that procedure as a method of avoiding the application of Rule 612, and we do not do so now.

Rule 612 allows sealing of the portions of a document that are unrelated to the subject matter of the testimony after an *in camera* inspection by the court. The record in this case does not reflect that any such inspection occurred. The court refused to make the document available based on the mistaken belief the State was not required to produce the document "at this stage of the proceedings." We have found no reported cases in which a writing used to refresh the memory of a witness has been made wholly unavailable because it was placed under seal by the court, and we do not now approve of that method for avoiding the application of the rule.

5. TEX.R. EVID. 612 provides in part:

 **RULE 612. WRITING USED TO REFRESH MEMORY**
 If a witness uses a writing to refresh memory for the purpose of testifying either
 (1) while testifying;
 ... or
 (3) before testifying, in criminal cases;
 an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

We have reviewed the document. It contains only information about the arrest, and there is nothing contained within its pages that would in any manner justify either the trial court's refusal to order the document turned over to defense counsel or its immediate agreement to seal the document.

 Error has been shown. We must now assess harm. The Texas Court of Criminal Appeals has held that this type of error implicates the operation of the confrontation clause and should therefore be analyzed as constitutional error. *Young v. State,* 830 S.W.2d 122 (Tex.Crim. App.1992); *Young v. State,* 891 S.W.2d 945, 948 (Tex.Crim.App.1994); [6] *Powell,* 5 S.W.3d at 381–82. As we recognized in *Powell,* when evidence has been excluded via the erroneous limitation of cross-examination, we are to apply the analysis for assessing harm in confrontation clause cases as set out in *Shelby v. State,* 819 S.W.2d 544, 547 (Tex.Crim.App.1991).

As we discussed in *Powell,* the preliminary focus of that analysis is to determine whether the report would have been useful for impeachment purposes. We have reviewed the document in detail and in the context of the examination of the officer at the suppression hearing. Although the trial court erred by refusing to provide the document, in this instance we find the document contains nothing that Larry could have used at trial to impeach the officer or the State's case. Thus, while the trial court erred by failing to allow counsel to inspect the report, and while the order sealing the report was also error, those errors are in this instance harmless.

We affirm the judgment.

---

**6.** In the first *Young* opinion, the court remanded for a harm analysis. The second opinion contains its review of the harm analysis conducted by the appellate court.