In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00098-CR


______________________________




ANTONIO PHILANDE NELSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 28930-A




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Antonio Philande Nelson appeals his conviction for aggravated robbery. He pled guilty, as
part of a negotiated plea agreement, and the trial court sentenced him to twenty-five years'
imprisonment, as called for in the agreement.

 Nelson filed a motion to suppress certain evidence and a statement he made to police. The
trial court overruled the motion after a hearing. Nelson has filed a specific notice of appeal as
required by Rule 25.2(b)(3). See Tex. R. App. P. 25.2(b)(3) (Vernon 2002). (1) On appeal, he contends
the trial court erred in overruling his motion to suppress.

 At the suppression hearing, Sergeant Donald Jeter testified he responded to a call concerning
the aggravated robbery of a pizza delivery person near a local motel. The suspect was described as
a black male, six feet tall, wearing a black hooded sweatshirt, black sweat pants, and a "black hooded
mask over his face." A maid at the motel witnessed a black man "walking down the sidewalk ahead
of her" wearing a black hooded jacket. 

 Jeter testified he asked the maid "how many rooms [in the motel] were rented to
African[-]American people." He testified the maid identified a single room, Room 202, in which
"a young black female and a [black] male [were] living" and that "they had friends that would come
and go that were also African[-]American." Jeter testified that he and other officers canvassed other
rooms in the motel looking for witnesses to the robbery. They also approached Room 202.

 Jeter testified that, when he knocked on the door to Room 202, Nelson answered. Also
present in the room was Latoya Coby. The officers ran standard background checks on both Nelson
and Coby and determined that Nelson had an outstanding warrant. He was placed under arrest, and
the officers left the room. 

 About forty-five minutes later, the officers again returned to Room 202. Jeter testified Coby
told him Nelson was her boyfriend, that she was living there with him, and that she "had been there
a while." He testified there were items of her clothing around the room. 

 Jeter testified he asked for and received Coby's consent to search the room. He testified he
told her that she was not under arrest and that she could refuse to permit the search. The search
revealed various items of evidence associated with the robbery.

 Officer Carl Watley testified he conducted an interview with Nelson in one of the interview
rooms at the Gregg County jail shortly after Nelson was booked in. He testified he first gave Nelson
the Miranda (2) warnings. Nelson then discussed his involvement in the aggravated robbery. 

 The two men retired to another room so that Watley could take a written statement. 
Regarding that written statement, Watley testified he had Nelson read the Miranda warnings, which
were written in bold letters on a preprinted form. Nelson waived his rights and wrote his initials near
the warnings. 

 Watley typed the statement from what Nelson told him. He then gave Nelson the opportunity
to read the statement and make any corrections. He testified he made the corrections Nelson
indicated and then had Nelson initial the corrections. Nelson also initialed the statement at the
beginning and end of each paragraph. Then Nelson signed the statement. 

 Watley testified he did not threaten Nelson in any way. He also testified he did not promise
Nelson anything for making the statement. The interview lasted approximately two and one-half
hours. 

 Nelson denied that Coby lived in Room 202 and testified that he was the only one registered
at the motel. He testified Coby visited him "early in the day or probably two, three days" so he could
see his son. He also testified he did not give Coby permission to allow anyone else into the room
or to allow the room to be searched. 

 Regarding the statement, Nelson testified as follows regarding the conversation he had with
Watley:

 A . . . . I asked him is my girlfriend and baby okay. He said they are
down at the police station. I said what for. He said she's under questioning. I said
what for. He said, well, she has something to do with things that have been
recovered from the room. I said what are you talking about. He goes on and he says
that -- I asked him, well, did anything happen to my son or her. He said, well, it's a
possibility. I said I don't know what for. I said why. He just goes on from there. I
really can't exactly tell you word for word what he was saying.


 Q [Defense Attorney on direct examination] Did he tell you that if you
did not cooperate with him and give a statement that your girlfriend could be
prosecuted for the robbery?


 A Yes, sir.


 Q Did he tell you that if you cooperated with him that your girlfriend
would not be prosecuted?


 A Yes, sir.


 Q Why was it that you gave a statement to Detective Watley?


 A I felt it was for the safety of my son.


 Q Did you make the statement in exchange for promises that Detective
Watley had made to you concerning your girlfriend?


 A Yes, sir.


 . . . .

 

 Q [Defense Attorney on redirect examination] . . . what did Detective
Watley tell you?


 A Detective Watley told me that the way it was looking from the point
I was sitting at when we were discussing the matter upstairs that she could possibly
be prosecuted knowing not who the male or who the person was that robbed the pizza
man. That she could be prosecuted and my son could end up in some other kind of
custody.


 Q Did he make any promises to you that your girlfriend would not be
prosecuted and your son wouldn't be placed in the welfare -- in a foster home?


 A Yes, sir.


 Q What did he say?


 A He just told me -- I sat and pondered for a minute. He left. He told
me he would give me time to think about it because I was objecting to the situation. 
When I was thinking about the situation about my son I really just really considered
to give him the statement to the fact when he was just -- 


 Q Was that something that you voluntarily chose to do or you felt
compelled to do because of what the officer was telling you or what he was
promising to do for you?


 A Yes. I felt like I was pretty much forced into the statement situation.


 At a suppression hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses and the weight of their testimony. Green v. State, 934 S.W.2d 92, 98
(Tex. Crim. App. 1996). Therefore, an appellate court must view the evidence in the record and
draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). Further, the appellate court must
sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory
of law applicable to the case. Id.; Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

 The general rule is that we must afford almost total deference to the trial court's
determination of the historical facts the record supports, especially when the trial court's fact-findings
are based on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). We are also to afford such deference to a trial court's ruling on the application
of law to fact questions if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. Id. We may review de novo the application of law to fact questions not
turning on credibility and demeanor. Id.

 Nelson first contends the trial court should have suppressed his written statement because
it was made involuntarily. When the voluntariness of a statement is challenged, the trial court must
make an independent determination in the absence of the jury as to whether the statement was
voluntarily made. Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 1979); Jackson v. Denno,
378 U.S. 368, 380 (1964). At this hearing, the State has the burden under the Fifth and Fourteenth
Amendments of proving by a preponderance of the evidence that the confession was voluntary. Lego
v. Twomey, 404 U.S. 477, 489 (1972); Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App.
1995). But the prosecution is not put to this burden unless a defendant presents evidence that raises
a voluntariness question. State v. Terrazas, 4 S.W.3d 720, 724 (Tex. Crim. App. 1999) (citing Tex.
Code Crim. Proc. Ann. art. 38.22, § 6).

 The statement of an accused may be used against him or her if it appears it was freely and
voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon 1979). A statement is involuntary if there was official, coercive conduct of such a nature
that any statement obtained was unlikely to have been the product of an essentially free and
unconstrained choice. Alvarado, 912 S.W.2d at 211.

 Nelson contends he presented unrebutted testimony that he felt coerced into making a
statement because Watley threatened to prosecute his girlfriend if he did not. But Watley testified
he did not threaten Nelson or make any promises. As the trier of fact, the trial court was free to give
greater weight to Watley's testimony than to Nelson's, or to disbelieve Nelson's testimony entirely. 
See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (holding trial court "may believe or
disbelieve all or any part of a witness's testimony, even if that testimony is not controverted"). 
Therefore, the trial court did not err in refusing to suppress Nelson's statement.

 Nelson also contends the trial court erred in failing to suppress the evidence uncovered during
the search of his motel room because Coby could not give consent to the search. Under the Fourth
and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant
issued with probable cause is per se unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219
(1973). Consent to search is one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause. Id.; Carmouche v. State, 10 S.W.3d 323, 331
(Tex. Crim. App. 2000). Usually the consent is obtained from the defendant.

 In this case, the State based its search on the consent of a third party. The consent of a person
who possesses common authority over premises or effects is valid against the absent, nonconsenting
person with whom that authority is shared. United States v. Matlock, 415 U.S. 164, 170 (1974). The
authority that justifies third party consent rests on the mutual use of the property by persons generally
having joint access or control for most purposes so that it is reasonable to recognize that one person
has the right to permit the search and the other has assumed the risk that such a search will be
permitted. Id. at 171 n.7.

 When the facts do not support a finding of actual authority, a search is reasonable if the facts
available to the officer would warrant a person of reasonable caution to believe the consenting
person had authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 188 (1990); Davis v.
State, No. 06-01-00144-CR, 2002 Tex. App. LEXIS 8652, at *10 (Tex. App.-Texarkana Dec. 10,
2002, no pet. h.). If not, then a warrantless search without further inquiry is unlawful unless
authority actually exists. Rodriguez, 497 U.S. at 188-89. The State has the burden of establishing
either common authority or apparent authority. See id. at 181; see also Welch v. State, No. 875-01,
2002 WL 31080716, at *2 (Tex. Crim. App. Sept. 18, 2002).

 In the present case, the trial court could have found the State met its burden of establishing
that Nelson and Coby had common authority over Room 202. Jeter testified the maid told him a
black man and a black woman were living in Room 202. He testified Coby told him she lived there
and "had been there a while." Though Nelson denied that Coby lived there and testified that he, not
she, was registered at the motel, the trial court was free to give greater weight to Jeter's testimony
or to disbelieve Nelson's testimony entirely. Jeter's testimony, if believed, is sufficient to show Coby
had actual authority to consent to the search.

 But even if the trial court believed Nelson, it could have found Jeter was acting on a
reasonable belief that Coby had authority to permit the search. Jeter testified the maid told him a
black woman was living in Room 202. Coby was in the room when Jeter came there the first time
and was still there forty-five minutes later when he returned after arresting Nelson. Jeter also
testified Coby told him that she was Nelson's girlfriend, that she lived there, and that she "had been
there a while." He further testified there were items of her clothing around the room. We conclude
Jeter's belief that Coby had authority to consent to the search of Room 202 was objectively
reasonable. The trial court did not err in refusing to suppress the evidence of the aggravated robbery.

 The judgment is affirmed.



 Jack Carter

 Justice


Date Submitted: February 3, 2003

Date Decided: February 6, 2003


Do Not Publish
1. By an order dated December 23, 2002, the Texas Court of Criminal Appeals approved
changes to Rule 25.2. The changes became effective January 1, 2003. Because Nelson filed his
notice of appeal before January 1, 2003, we apply the former rule.
2. Miranda v. Arizona, 384 U.S. 436 (1966).



ript type="text/javascript" language="javascript">
 if( bInlineFloats )
 {
 document.write( '' );
 document.write( WPFootnote4 );
 document.write( '
Close' );
 document.write( '' );
 }



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      July 21, 2004
Date Decided:         August 13, 2004