NO. 12-02-00172-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


IMARI ASKARI MUJIHAD ISLAM,
§
 APPEAL FROM THE 145TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 NACOGDOCHES COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant Imari Askari Mujihad Islam ("Appellant") was convicted after a trial by jury of
possession of a controlled substance with intent to deliver and possession of marijuana. Both
charges were tried together. The trial court sentenced Appellant to twenty-five years of
imprisonment in the Texas Department of Corrections-Institutional Division for possession of a
controlled substance with intent to deliver, and two years of confinement in a state jail facility for
possession of marijuana. Appellant raises two issues on appeal. We affirm.


Background

 At 1:00 a.m. on September 18, 1998, Appellant got on a bus leaving Houston, Texas, bound
for Memphis, Tennessee. The bus stopped in Nacogdoches, where Henri Cruse ("Cruse"), a member
of the Deep East Texas Narcotics Task Force, in the course of his duties as a drug interdiction
officer, got on the bus, and worked his way from the back of the bus toward the front. Cruse talked
with passengers at random, including Appellant. Cruse looked for several criteria, including not
having any identification, and not having personal items such as a toothbrush or a change of clothing
for a person taking an extended trip, which could raise his suspicions and would lead to further
questioning. Based on his training, such criteria and responses, when taken together, could suggest
criminal activity. Cruse explained that, through his questioning, he gathered information from which
he would decide whether to ask permission to search the questioned passenger or move on to the
next passenger. Cruse admitted that, standing alone, the answers to those questions did not give him
probable cause to search. He identified Houston as a "hub" from which drugs are dispersed along
bus routes to avoid traffic stops. 

 Cruse testified that he had spoken to several other passengers on the bus before he got to
Appellant. When Cruse identified himself as a police officer and asked Appellant for identification
and his bus ticket, Appellant became very nervous, his voice trembling and his hand shaking. After
learning that the ticket had been paid for with cash, Cruse asked permission to search Appellant and
his bags, and Appellant said "go ahead." When he patted down Appellant, he found a large round
package in his pocket, a gray-duct-tape-wrapped package containing 210.6 grams (7.41 ounces) of
marijuana. Cruse arrested Appellant, and began to drive Appellant to the Nacogdoches Sheriff's
Office for booking in. Cruse was contacted by the sheriff's office and told to return to the bus station
because Appellant had the ticket of a woman who was still on the bus and trying to continue on to
Memphis. Cruse asked Appellant where his ticket was, and Appellant indicated in his pocket. Cruse
searched Appellant's pocket and retrieved two sequentially numbered tickets that Appellant had
purchased with cash. When Cruse got back to the bus station, he boarded the bus and approached
the woman, Charlotte Eskridge ("Eskridge"), whom the bus driver identified as the woman who
needed her bus ticket. When Cruse asked what the problem was, Eskridge, who had been sitting two
rows behind Appellant on the bus, explained that Appellant had her bus ticket.

 Cruse was suspicious of Eskridge because Appellant had her ticket. As they talked, Cruse
noticed that Eskridge was sweating despite the fact that it was 4:00 a.m. and cool. Cruse asked if
he could search her bags. Eskridge consented and pointed to a Wal-Mart plastic bag in the luggage
compartment above her. Inside the bag was a gray-duct-tape-wrapped package, like the one found
in Appellant's pocket. Eskridge then pointed to another similar bag next to the first one. After
getting permission to examine that package, Cruse found another gray-duct-tape-wrapped package. 
The packages contained a total of 987.65 grams of eighty-two percent pure cocaine. Cruse testified
that cocaine in that quantity was in excess of what someone would possess for his own use, but
would be consistent with possession for distribution. Cruse arrested Appellant and Eskridge for
possession of the cocaine. Cruse testified that Appellant had no personal possessions, but had forty
dollars and a credit card with him. Eskridge had no personal possessions, other than the packages
containing the cocaine. She had no money, credit card, or checkbook. Cruse explained that
Eskridge's role was as a "mule," to carry someone else's drugs. Cruse further explained that a mule,
because she is traveling without any money, is in the total control of the manager. Cruse explained
that without any money, the mule cannot get off the bus and leave with the drugs because she cannot
buy anything, including another ticket to another destination, or effectuate a departure from the
managing person. And, since the drugs are in the hands of the mule, if the mule is arrested, the
managing person can possibly escape detection. Significantly, Cruse testified that Eskridge told him
the cocaine belonged to Appellant.

 The jury found Appellant guilty of possession of marijuana and possession of a controlled
substance, cocaine, with intent to deliver. The trial court sentenced him to twenty-five years of
imprisonment in the Texas Department of Corrections-Institutional Division for possession of a
controlled substance with intent to deliver, and two years of confinement in a state jail facility for 
possession of marijuana.


Legal Sufficiency


Standard of Review

 In his first issue, Appellant argues that the evidence is legally insufficient to support his
conviction of possession for cocaine with intent to deliver. In reviewing a legal sufficiency question,
we must view the evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The trier of fact, here the jury, is the exclusive
judge of the credibility of witnesses and of the weight to be given their testimony. Barnes v. State,
876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim.
App. 1984). The jury is entitled to draw reasonable inferences from the evidence. Benavides v.
State, 763 S.W.2d 587, 588-89 (Tex. App.-Corpus Christi 1988, pet. ref'd). Likewise, reconciliation
of conflicts in the evidence is within the exclusive province of the jury. Losada v. State, 721 S.W.2d
305, 309 (Tex. Crim. App. 1986). Although an appellate court's analysis considers all the evidence
presented at trial, it may not "re-weigh the evidence and substitute [the appellate court's] judgment
for that of the jury." King, 29 S.W.3d at 562. The evidence is measured for sufficiency by looking
at the indictment as incorporated in the court's charge to the jury. Fisher v. State, 887 S.W.2d 49,
53 (Tex. Crim. App. 1994)(op. on reh'g).

 Appellant was indicted on two charges: possession of more than four ounces but less than
five pounds of marijuana, Tex. Health & Safety Code Ann. § 481.121(b)(3)(Vernon 2002), and
possession of over 400 grams of cocaine with an intent to deliver, Tex. Health & Safety Code
Ann. § 481.112(a), (f)(Vernon 2002).

 Although Appellant filed and urged a motion to suppress the search of his person, he agreed
that he consented to that search. At trial, Appellant did not contest the search and seizure of the
marijuana nor did he contest the search and seizure of the cocaine which was found under Eskridge's
control after Cruse received her permission to search her person and plastic bags. At the conclusion
of the trial, Appellant made a motion for directed verdict as to the cocaine charge, which was denied.
Therefore, our discussion is limited to Appellant's conviction for possession of cocaine with intent
to deliver.

Applicable Law

 Under Section 481.112, a person commits an offense if he "knowingly manufactures,
delivers, or possesses with intent to deliver" cocaine. Tex. Health & Safety Code Ann. § 481.112
(a),(f). Possession is defined as "actual care, custody, control, or management." Tex. Health &
Safety Code Ann. § 481.002(38) (Vernon Supp. 2003). An intent to distribute can be inferred
from possession of a large amount of controlled substance. United States v. Meneses-Davila, 580
F.2d 888, 897 (5th Cir. 1978); Bethancourt-Rosales v. State, 50 S.W.3d 650, 653 (Tex. App.-Waco
2001, pet. ref'd). Where a defendant is not in sole possession of the controlled substance, the State
must also prove additional factors which affirmatively link the accused to the controlled substance. 
Affirmative links are those "secondary facts that indicate the accused's knowledge and control of
the contraband." Martinets v. State, 884 S.W.2d 185, 188 (Tex. App.-Austin 1994, no pet.). The
totality of the circumstances is more important in the determination of whether the accused is
sufficiently linked to the controlled substance than the number of these factors relevant to the case. 
See id. It has been stated that the "affirmative link customarily emerges ... from an orchestration of
several of [a list of] factors, and the logical force they have in combination." Trejo v. State, 766
S.W.2d 381, 385 (Tex. App.-Austin 1989, no pet.). Among the factors relevant to this case which
courts have considered as affirmative links are the following: (1) the contraband was conveniently
accessible to the appellant, (1) (2) the appellant had a special connection to the contraband, (2) (3) the
appellant's conduct indicated consciousness of guilt, (3) (4) affirmative statements linked the appellant
to the controlled substance, (4) and (5) the appellant was in possession of the contraband. (5)

Discussion

 In the present case, the cocaine was reasonably accessible to Appellant. Appellant sat two
seats directly in front of Eskridge. He could thereby prevent her from exiting the bus without his
permission. The packages of cocaine were on the rack immediately above her seat on the bus and,
therefore, just behind him on the rack.

 Appellant also had several special connections to the contraband. Both the marijuana found
on Appellant and the cocaine were wrapped in similar gray duct tape. Appellant was holding the
sequentially numbered bus tickets for himself and Eskridge, purchased with cash, and both in
Appellant's name. Eskridge had no money or credit card. As Cruse explained, drug transporters
were known to frequently use another person to actually carry the drugs, but maintain control over
that person by depriving the person of any money and retaining the person's ticket. As a result, the
person could not leave with the drugs, and remained subject to the direction of the drug transporter. 
The absolute control of Appellant over Eskridge was demonstrated when, after Appellant was
arrested for possessing marijuana, Eskridge asked the bus driver to contact the police to bring her
ticket to her because she would otherwise be stranded without any means to complete her trip back
to Memphis. He also testified that neither Appellant nor Eskridge had any luggage or personal
effects that one would expect a person traveling for several days to have. Appellant's reaction to
Cruse is also a recognized affirmative link between Appellant and the drugs. Appellant was
extremely nervous, his hand and his voice trembling. Finally, a very significant affirmative link from
which the jury could reasonably connect Appellant and the cocaine was that Eskridge told Cruse the
cocaine was Appellant's. Furthermore, Cruse testified that the amount of cocaine seized was in
excess of what one would possess for personal use and was consistent with possession of cocaine
with intent to deliver.

 We find that there is sufficient evidence upon which a rational trier of fact could have found
the essential elements of the offense of possession of cocaine with the intent to deliver. Further, the
affirmative links were sufficient to establish that Appellant was exercising care, custody and control
over the cocaine. Therefore, the evidence is legally sufficient to support the jury finding that
Appellant committed the offense of possession of cocaine with the intent to deliver. Appellant's first
issue is overruled.


Factual Sufficiency

Standard of Review

 When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). In conducting our analysis, our duty is to examine the trier of fact's weighing of the evidence. 
Scott v. State, 934 S.W.2d 396, 398 (Tex. App.-Dallas 1996, no pet.). We consider all the evidence
in the record related to an appellant's sufficiency challenge, comparing the weight of the evidence
that tends to prove guilt with the evidence that tends to disprove it. See Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999); Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). Because we consider all the evidence in conducting a factual sufficiency review, we
necessarily consider any reasonable alternative hypothesis raised by the evidence. Richardson v.
State, 972 S.W.2d 384, 387 (Tex. App.-Dallas 1998, no pet.). However, the mere existence of a
reasonable hypothesis does not render the evidence factually insufficient. Id.

 Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain,
958 S.W.2d at 407. However, absolute deference is not the standard. Johnson v. State, 23 S.W.3d
1, 8 (Tex. Crim. App. 2000). The degree of deference we give to jury findings must be proportionate
with the facts which we can accurately glean from the trial record. Id. Our factual sufficiency
analysis can consider only those few matters bearing on credibility that can be fully determined from
the cold appellate record. Id. Unless the appellate record before us reveals that a different result is
appropriate, we must defer to the jury's determination concerning what weight to give contradictory
testimonial evidence. Id. This is because resolution often turns on an evaluation of credibility and
demeanor, and the jury was in attendance when the testimony was delivered. Id. We then accord
this evidence appropriate consideration in the context of our overall analysis. Id. at 8-9. A factual
sufficiency review encompasses the formulations used in both civil and criminal cases. Id. at 11. 
This means that the evidence can be factually insufficient if (1) it is so weak that the contrary finding
is clearly wrong and manifestly unjust, or (2) the adverse finding is against the great weight and
preponderance of the available evidence. Id. The court of criminal appeals in Johnson further
states:


 [T]he complete and correct standard a reviewing court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, or the proof of guilt, although adequate when
taken alone, is greatly outweighed by contrary proof.



Id.

Discussion

 Applying these guidelines to the evidence, the evidence established that Appellant was in
possession of the marijuana, he had the sequentially numbered bus ticket of Eskridge who was
actually transporting the cocaine, the marijuana and the cocaine were both wrapped in gray duct tape,
and Eskridge told Cruse that the cocaine was Appellant's. Our review of the record as a whole has
not revealed that the evidence is so weak that the jury's finding of guilt is clearly wrongly and
manifestly unjust or is against the great weight and preponderance of the evidence. Furthermore,
proof of guilt is not so obviously weak as to undermine confidence in the jury's determination or
greatly outweighed by contrary proof although adequate when taken alone. Therefore, we conclude
the evidence is factually sufficient for the jury to find Appellant guilty as charged.


Conclusion

 There being legally and factually sufficient evidence to support the verdict, Appellant's issues
are overruled. The judgment is affirmed.


 SAM GRIFFITH 

 Justice


Opinion delivered July 31, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.
























(DO NOT PUBLISH)
1. Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. [Panel Op.] 1981).
2. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd).
3. Davis v. State, 93 S.W.3d 664, 668 (Tex. App.-Texarkana 2002, no pet.).
4. Davis, 93 S.W.3d at 668.
5. de la Garza v. State, 898 S.W.2d 376, 379 (Tex. App.-San Antonio 1995, no pet.).