NO. 12-02-00251-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS 


CHASTON RAMON GEORGE,
§
 APPEAL FROM THE 124TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF 


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS






MEMORANDUM OPINION


 Appellant Chaston Ramon George ("Appellant") was convicted of felony possession of a
controlled substance with intent to deliver. The jury sentenced him to ten years of imprisonment. 
In two issues on appeal, Appellant argues that the evidence is both legally and factually insufficient
to support the conviction. We affirm.

 

Facts

 On November 15, 2001, Longview police officer Shane Manion ("Manion") was patrolling
a high-narcotic area of central Longview when he saw the driver of a mid-eighties Cadillac throw
out a beer can. He stopped the vehicle for littering. He observed the two occupants talking together
excitedly and making what he perceived as furtive gestures towards the center of the seat and
reaching into their pockets. The driver also laid his hand over the back of the seat. After requesting
the two men show their hands and stop making furtive movements, Manion requested back-up
officers, who quickly arrived and assisted Manion in removing the two men from the car. Lee
Charles Gray, Jr.("Gray") was driving, and Appellant was also in the front passenger seat. As he
approached the car, Manion smelled burnt marijuana. As Longview police officer Phillips got
Appellant out of the car, Appellant threw down a plastic bag by the front passenger door. A test
later indicated the bag contained cocaine residue. As Manion attempted to speak with Appellant,
Appellant began chewing rapidly and white drool came out of his mouth. Manion suspected that
Appellant had drugs in his mouth and was attempting to dispose of the evidence. Appellant began
to "gag" and a piece of the white substance fell from his mouth onto the car roof. Before the police
could retrieve the lump of evidence, Appellant began to rub the particle into the roof with his chin. 
The police also seized a large "cookie" of crack cocaine from the rear floor of the car, and a baggie
of marijuana from under the driver's seat. The police arrested Gray, the driver, and initially arrested
Appellant. However, Appellant was soon released to the emergency medical service who transported
him to a local hospital because he was suspected of ingesting cocaine, which raised concern about
his health. 

 At trial, in addition to the street officers testifying about the arrest and release of Appellant
to the emergency medical service, a Department of Public Safety ("DPS") chemist testified the
"cookie" contained 2.19 grams of cocaine and the seized baggie had a trace amount of cocaine
residue. He also testified that he did not test the substance Appellant crushed into the roof of the car
with his chin because DPS procedure is that, if clean substance is available, substances combined
with body fluids, such as the evidence sample containing Appellant's saliva, are not tested.

 After the State rested, Appellant called Gray's sister, who testified that she saw the police
stop her now-deceased brother's car in front of her house, and testified generally about the stop and
arrest. Appellant's attorney then requested a hearing outside the presence of the jury and called
Appellant for the purpose of establishing Appellant's desire to testify and to call several witnesses
on his behalf, against the advice of counsel. Appellant then proceeded to call Sheronda Beck with
whom Appellant lived when he was not living with his grandmother. Beck testified that after
Appellant was released by the police, he was transported to Good Shepherd Medical Center Hospital
for treatment because he had eaten crack cocaine. Appellant then called his sister, Keena George,
who testified that she had visited Appellant in the hospital the night of his stop and brief arrest,
where he was being treated with charcoal after he had swallowed crack cocaine.

 Appellant testified that he did not see what Gray dropped behind the seat, but Appellant
picked up the empty baggie, told the police there was nothing in the baggie, and threw it down. He
also testified that the police did ask to look in his mouth for drugs, that he opened his mouth, and
that there were no drugs in his mouth. According to Appellant, the police admitted they knew he
did not have any drugs, and he went to the hospital because he was drunk. Appellant stated that the
police told him they initially believed he had eaten the cocaine, but because the hospital's heart
monitor did not indicate his heart rate had increased, the police, who had followed him to the
hospital, concluded that he had not eaten the drugs. Further, he related that the officers requested
that he sign a statement that Gray was in possession of the 2.19 grams of crack cocaine. 

 On cross-examination, Appellant admitted various prior convictions, including one for
possession of a controlled substance, which he testified was originally indicted as delivery of a
controlled substance. He also admitted to being in jail at the time of trial for possession of marijuana,
but disagreed as to the correctness of another judgment for conviction on another marijuana charge. 
He admitted to a failure to identify conviction and a criminal trespass conviction. A certified copy
of the judgment for each conviction, including the one he denied, was admitted into evidence.
Appellant denied that he was making furtive movements as the police testified and explained that
was reaching for his seat belt. He also testified the officer noticed the baggie of marijuana, and
asked him what it was. According to Appellant, it was at that time that he picked up the baggie in
response to the officer's command, and then dropped it to the ground. He stated that the officer
never asked if he had been eating drugs. However, when pressed by the State's attorney, he
immediately said he was asked about eating drugs and opened his mouth to show the officers he had
no drugs. He also contended that Officer Manion told him he "kind of [knew] what was going on"
and so Appellant was free to go. He also contended the indictment referred only to the drugs in the
rear floor of the car and any drugs in his mouth were "another case." He also denied telling the
hospital staff he had eaten cocaine.

 In rebuttal, Officer Manion testified that Appellant had told him, after he had chewed up the
white substance, that he had just eaten crack cocaine. The State then admitted into evidence
Appellant's medical records for his admission and treatment at Good Shepherd on the date of the
incident. Dr. Brian King testified that Appellant had been admitted to the hospital after complaining
that he had swallowed a "half ounce of cocaine", and had been treated with charcoal to prevent
absorption of the cocaine, as well as a drug for the general symptoms of cocaine overdose. Dr. King
testified that Appellant was released, but returned the next day complaining that he had swallowed
"a whole bunch of crack cocaine" and was dizzy. The doctor also read from Appellant's medical
records that Appellant had told the treating physician on the night he was admitted to the hospital
that "he had swallowed a half ounce of crack after he was stopped by the police. He also reported
that he did not normally use crack and that he just sells it." Dr. King testified that the symptoms
Appellant complained of, such as dizziness, dry mouth and numbness in his hands and feet, were
consistent with ingestion of cocaine. Lab tests indicated Appellant had no alcohol in his system, but
did establish the presence of cocaine and marijuana.

 After rebuttal, Appellant testified that the doctor was incorrect and that the hospital
performed tests to ascertain whether he had ingested the cocaine as the police suggested, not because
he admitted eating cocaine. He testified that the dizziness and numbness he reported when he
returned to the hospital the next day were due to the drugs the hospital had given him and not from
ingesting cocaine. On cross-examination, he denied he had told anyone he had eaten cocaine. He
also contended that the positive test for cocaine was due to the presence of cocaine in the marijuana
he had smoked.

 The jury found Appellant guilty of possession of cocaine with intent to deliver and sentenced
him to ten years of imprisonment. Appellant raises two issues on appeal contending that the
evidence is both legally and factually insufficient to support the conviction. 


Legal Sufficiency


Standard of Review

 In reviewing a legal sufficiency question, we must view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000). The trier of fact, here the jury, is the exclusive judge of the credibility of witnesses and of
the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App.
1994); Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury is entitled to draw
reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.-
Corpus Christi 1988, pet. ref'd). Likewise, reconciliation of conflicts in the evidence is within the
exclusive province of the jury. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 
Although an appellate court's analysis considers all the evidence presented at trial, it may not "re-weigh the evidence and substitute [the appellate court's] judgment for that of the jury." King v.
State, 29 S.W.3d at 562. Sufficiency of the evidence is determined by the elements of the crime as
defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). The correct charge "would be one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which the defendant
was tried." Id. 

Analysis

 Appellant's indictment contains three paragraphs. The first paragraph alleges possession
of more than one gram but less than four grams of cocaine with an intent to deliver. The second
paragraph alleges Appellant possessed more than one gram but less than four grams of cocaine,
without an allegation of an intention to deliver. The third paragraph alleges possession of less than
one gram of cocaine. The jury found Appellant guilty of possession of more than one gram but less
than four grams of cocaine with an intent to deliver. 

 A person commits an offense if he "knowingly manufactures, delivers, or possesses with
intent to deliver" cocaine. Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.112(a), (c)
(Vernon 2003). Possession is defined as "actual care, custody, control, or management." Tex.
Health & Safety Code Ann. § 481.002(38) (Vernon 2003).

 The officers testified that Appellant made furtive gestures and, after he was removed from
the car, began chewing something which caused him to "gag." They also noticed white particles in
his saliva. When a white particle fell from Appellant's lips, he ground it into the roof of the car with
his chin in an attempt to prevent the police from obtaining it. Appellant admitted to his family and
to the treating physician that he had eaten the cocaine, which was confirmed by the drug testing. 

 Additional drugs were found in the car. Where a defendant is not in sole possession of the
controlled substance, the State must also prove additional factors which affirmatively link the
accused to the controlled substance. Affirmative links are "those secondary facts that indicate the
accused's knowledge and control of the contraband." Martinets v. State, 884 S.W.2d 185, 188 (Tex.
App.-Austin 1994, no pet.). The totality of the circumstances is more important in the determination
of whether the accused is sufficiently linked to the controlled substance than the number of these
factors relevant to the case. See id. It has been stated that the "affirmative link customarily emerges
from an orchestration of several of a list of factors and the logical force they have in combination." 
Trejo v. State, 766 S.W.2d 381, 385 (Tex. App.-Austin 1989, no pet.). Among the factors relevant
to this case which courts have considered as affirmative links are the following: (1) the contraband
was conveniently accessible to the appellant; (1) (2) the appellant had a special connection to the
contraband; (2) (3) the appellant's conduct indicated consciousness of guilt; (3) (4) affirmative statements
linked the appellant to the controlled substance; (4) and (5) the appellant was in possession of the
contraband. (5)

 Here, Appellant ingested cocaine after the stop. The other cocaine, the cookie, was in the
rear floor of the car and reasonably accessible to Appellant. Appellant and Gray made furtive
gestures after the police stopped the car, and Appellant handled the baggie containing the cocaine
residue. Appellant exhibited a consciousness of guilt when he attempted to destroy the evidence of
cocaine both by eating it and by rubbing it into the roof of the car with his chin when it fell from his
mouth. Appellant also told the treating physician that he sold cocaine. These affirmative links are
sufficient to establish that Appellant exercised care, custody, and control over the cocaine.

 Applying the appropriate standard of review, we hold that there is sufficient evidence from
which a rational trier of fact could have found the essential elements of the offense of possession of
cocaine with the intent to deliver beyond a reasonable doubt. Therefore, the evidence is legally
sufficient to support the jury finding that Appellant committed the offense of possession of cocaine
with the intent to deliver. Appellant's issue as to legal sufficiency is overruled.


Factual Sufficiency

Standard of Review

 When reviewing the factual sufficiency of the evidence, we review all of the evidence, but
not in the light most favorable to the prosecution. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). In conducting our analysis, our duty is to examine the trier of fact's weighing of the evidence. 
Scott v. State, 934 S.W.2d 396, 398 (Tex. App.-Dallas 1996, no pet.). We consider all the evidence
in the record related to an appellant's sufficiency challenge, comparing the weight of the evidence
that tends to prove guilt with the evidence that tends to disprove it. See Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999); Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). Because we consider all the evidence in conducting a factual sufficiency review, we
necessarily consider any reasonable alternative hypothesis raised by the evidence. Richardson v.
State, 972 S.W.2d 384, 387 (Tex. App.-Dallas 1998, no pet.). However, the mere existence of a
reasonable hypothesis does not render the evidence factually insufficient. Id.

 Because the jury is the sole judge of the facts, we must give deference to jury findings. Cain,
958 S.W.2d at 407. However, absolute deference is not the standard. Johnson v. State, 23 S.W.3d
1, 8 (Tex. Crim. App. 2000). The degree of deference we give to jury findings must be proportionate
with the facts which we can accurately glean from the trial record. Id. Our factual sufficiency
analysis can consider only those few matters bearing on credibility that can be fully determined from
the cold appellate record. Id. Unless the appellate record before us reveals that a different result is
appropriate, we must defer to the jury's determination concerning what weight to give contradictory
testimonial evidence. Id. This is because resolution often turns on an evaluation of credibility and
demeanor, and the jury was in attendance when the testimony was delivered. Id. We then accord
this evidence appropriate consideration in the context of our overall analysis. Id. at 8-9. A factual
sufficiency review encompasses the formulations used in both civil and criminal cases. Id. at 11. 
This means that the evidence can be factually insufficient if (1) it is so weak as to be clearly wrong
and manifestly unjust or (2) the adverse finding is against the great weight and preponderance of the
available evidence. Id. The court of criminal appeals in Johnson further states:


 [T]he complete and correct standard a reviewing court must follow to conduct a Clewis factual
sufficiency review of the elements of a criminal offense asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination, or the proof of guilt, although adequate when
taken alone, is greatly outweighed by contrary proof.


Id.

 Appellant's testimony is the only evidence in the record that is contrary to the verdict. In his
testimony, Appellant contradicted the version of events offered by the police officers and Dr. King
and also denies his own culpability. The jury is the sole judge of the credibility of witnesses and of
the weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App.
1994). Any reconciliation of conflicts and contradictions in the evidence is entirely within the jury's
domain. Losada, 721 S.W.2d at 309. In doing so, the jury may believe or disbelieve all or any part
of any witness's testimony. Johnson v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). 
Consequently, the jury was free to disbelieve all or any part of Appellant's testimony. 

 In our neutral review of the record, we conclude that the proof of guilt is not so obviously
weak as to undermine confidence in the jury's determination, or that the proof of guilt, although
adequate when taken alone, is greatly outweighed by contrary proof. Therefore, the evidence was
factually sufficient for the jury to find Appellant guilty as charged. 


Conclusion

 There being legally and factually sufficient evidence to support the verdict, Appellant's issues
are overruled. The judgment of the trial court is affirmed.

 SAM GRIFFITH 

 Justice

Opinion delivered August 29, 2003.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.





(DO NOT PUBLISH)
1. Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. [Panel Op.] 1981).
2. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd).
3. Davis v. State, 93 S.W.3d 664, 668 (Tex. App.-Texarkana 2002, no pet.).
4. Davis, 93 S.W.3d at 668.
5. de la Garza v. State, 898 S. W.2d 376, 379 (Tex. App.-San Antonio 1995, no pet.).