Affirmed and Memorandum Opinion filed February 16, 2006









Affirmed
and Memorandum Opinion filed February 16, 2006.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00325-CR

____________

 

ERIC EUGENE BAILEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County Criminal
Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 1200162

 



 

M E M O R A N D U M  O P I N I O N








A jury found appellant Eric Eugene Bailey
guilty of the misdemeanor offense of possessing a firearm after previously
having been convicted of the offense of assault to a family member and before
the fifth anniversary of his release from confinement following the assault
conviction.[1]  Appellant pleaded true to an enhancement
paragraph, and the jury assessed punishment at 365 days= confinement in
jail and a fine of $1,000.  In four
points of error, appellant argues (1) the trial court erred in denying his
motion for a directed verdict, (2) the prosecutor committed misconduct in
relation to the admission of evidence, (3) counsel was ineffective in failing
to object to inadmissible evidence, and (4) the court erred in admitting
evidence (the firearm) for which the State did not establish the proper chain
of custody.  We affirm.

Factual
Background

Officers T.B. Anderson, David Jasper, and
Laura Drury, of the Harris County Sheriff=s Office,
responded to a 911 call from a female reporting a family disturbance and
assault at appellant=s house. 
When the officers arrived at the residence, a woman outside informed
them her cousin was inside with her cousin=s Ababy=s daddy.@  The woman also told the officers the man
would not let her cousin leave the house and her cousin had screamed for her to
call the police.

When appellant answered the officers= knock at the
door, he was breathing hard, as though he had been in a fight, and he had blood
on his face.  Based on these
circumstances, Officer Jasper immediately handcuffed appellant and placed him
in a patrol car for safety.  While
Officer Jasper remained with appellant, Officers Anderson and Drury entered the
house to check on the woman inside, Wysemuria Willis.

Officers Anderson and Drury entered the
bedroom and noticed it was in disarray, as if a struggle had occurred.  Officer Drury heard Willis crying in the
attached bathroom and when to check on her. 
According to Drury, Willis was very upset, was screaming and crying, and
was covered in blood.  Willis told Drury
she and appellant had fought.  Appellant
poked her eye, and her eye was red and swollen. 
Willis also told Drury appellant had grabbed her by her head and thrown
her on to the bed, causing her to cut herself on a vase.

While Drury was attending to Willis,
Officer Anderson noticed a gun lying, uncovered, on the bedroom floor near the
bathroom door.  Anderson seized the gun
and gave it to Officer Jasper, who was still outside in his patrol car with
appellant.  Without being asked,
appellant kept yelling the gun belonged to his brother.








Willis, who dated appellant for five years
and had a child with him, stated she and appellant leased the duplex together
and shared the bedroom in which Officer Anderson found the gun.  She also identified items on top of an
entertainment center in the bedroom as appellant=s wallet, cellular
telephone, and keys.

At trial, however, Willis testified to a
different version of events than those described by the officers.  Willis agreed the argument started in the
bedroom, but claimed she started it.  She
stated appellant did not hit her, and explained she hurt her face when she
tripped and fell on the vase she had broken earlier.  At one point she went into the bathroom to
wash her face, and appellant went in with her. 
She testified the blood on her sweatshirt was from a previous incident
that did not involve appellant and her eye was swollen from crying.

Willis testified appellant=s brother, Charles
Bailey, owned the gun Officer Anderson seized. 
According to Willis, Charles left the gun on top of a television in her
seven-year-old son=s room, where Charles had stayed for the
weekend.  When Willis found the gun in
her son=s bedroom, she
took it and placed it on top of some clothes in a closet in the bathroom.

Willis testified Officer Drury found the
gun in the closet while the officer was Agoing through
[her] things.@ 
Willis claimed the gun was never on the floor.  She never saw appellant in possession of a
gun, and according to her, appellant was not aware of the gun=s presence in the
closet.

Appellant=s brother
testified, confirming the gun was his. 
He claimed he left the loaded gun in the seven-year-old=s bedroom.  He stated doing so was the result of a Acareless mistake.@

Discussion

I. 
Denial of Appellant=s Motion for a
Directed Verdict








In his first point of error, appellant
argues the trial court erred when it denied his motion for a directed
verdict.  An appellate court treats a
point of error complaining about the trial court=s failure to grant
a motion for directed verdict as a challenge to the legal sufficiency of the
evidence.  Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996). 
Evidence is legally sufficient when, viewed in the light most favorable
to the verdict, a rational jury could have found the essential elements of the
offense beyond a reasonable doubt.  Id.
at 482B83 (citing Jackson
v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979)).  This standard applies to both direct and
circumstantial evidence cases.  Geesa
v. State, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), overruled on other
grounds by Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. App.
2000).  Our duty is not to reweigh the
evidence from reading a cold record but to position ourselves A>as a final, due
process safeguard ensuring only the rationality of the factfinder.=@ Williams,
937 S.W.2d at 483 (quoting Matamoros v. State, 901 S.W.2d 470, 474 (Tex.
Crim. App.1995); and Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988)).

To establish unlawful possession of a
firearm in the present case, the State had to prove appellant was previously
convicted of a Class A misdemeanor assault on a member of his family or household
and possessed a firearm after the conviction and before the fifth anniversary
of the date of his release from confinement following conviction of the
misdemeanor.  See Tex. Pen. Code Ann. ' 46.04(b)(1)
(Vernon Supp. 2005); see also Tex.
Pen. Code Ann. ' 22.01 (Vernon Supp. 2005) (proscribing
assault).  Appellant contends the
evidence was insufficient to establish the element of possession.








We use the rules adopted for determining
the sufficiency of the evidence in cases of possession of a controlled
substance to analyze the sufficiency of the evidence in cases involving
possession of a firearm.  Corpus v.
State, 30 S.W.3d 35, 37 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
Therefore, the State had to prove appellant knew of the firearm=s existence and he
exercised actual care, custody, control, or management over it.  See id. at 38; see also Tex. Pen. Code Ann. ' 1.07 (39) (Vernon
Supp. 2005) (defining possession as Aactual care,
custody, control, or management@).  Possession need not be exclusive.  See McGoldrick v. State, 682 S.W.2d
573, 578 (Tex. Crim. App. 1985) (regarding possession of dangerous drugs and
narcotics).

When the contraband is not found on the accused=s person or is not
in the accused=s exclusive possession, additional facts
must affirmatively link the accused to the contraband.  McMillon v. State, 940 S.W.2d 767, 768B69 (Tex. App.CHouston [14th
Dist.] 1997, pet. ref=d).  
Factors establishing affirmative links may include whether:  (1) the contraband was in a place owned by
the accused; (2) the contraband was conveniently accessible to the accused; (3)
the contraband was in plain view; (4) the contraband was found in an enclosed
space; (5) the conduct of the accused indicated a consciousness of guilt;  (6) the accused had a special relationship to
the contraband; and (7) affirmative statements connect the accused to the
contraband.  See Corpus, 30 S.W.3d
at 38 (listing ten factors relevant in case in which firearm was found in
vehicle); see also Davis v. State, 93 S.W.3d 664, 668 (Tex. App.CTexarkana 2002,
pet. ref=d) (listing Corpus
factors relevant to case in which firearm was found in residence, rather than
vehicle).  The number of factors present
is not as important as the logical force the factors have in establishing the
elements of the offense.  Corpus,
30 S.W.3d at 38.  The State=s evidence must
establish the accused=s connection with the firearm was more
than just fortuitous.  Bates v. State,
155 S.W.3d 212, 216 (Tex. App.CDallas 2004, no
pet.).  Nevertheless, the link between
the accused and the firearm need not be so strong that it excludes every other
outstanding reasonable hypothesis except the accused=s guilt. See
Jennings v. State, 107 S.W.3d 85, 89 (Tex. App.CSan Antonio 2003,
no pet.) (rejecting defendant=s argument resting
on premise State=s evidence had to eliminate the reasonable
hypothesis that appellant was entirely unaware of the presence of the weapon); see
also Grant v. State, 989 S.W.2d 428, 433 (Tex. App.CHouston [14th
Dist.] 1999, no pet.) (in possession of controlled substance case, stating link
between defendant and drugs need not be so strong that it excludes every other
outstanding reasonable hypothesis except defendant=s guilt).

In the present case, the following
evidence affirmatively links appellant with the gun:








$ the gun was found
in a house appellant leased, and in a bedroom appellant shared, with Willis;

$ the gun was in
plain view;

$ the gun was found
a foot and a half from the bathroom door, an area where Willis=s testimony placed
the defendant shortly before the police arrived;

$ there were only
two adults in the house at the time of the fight, and given the evidence
appellant was beating Willis, a reasonable jury could infer appellant, rather
than Willis, exercised control over the gun;

$ appellant,
without being questioned, spontaneously, and apparently vigorously, denied the
gun was his when he merely saw it in Jasper=s patrol car.

The evidence in the present case compares
more than favorably to that in Davis v. State, 93 S.W.3d 664 (Tex. App.CTexarkana 2002,
pet. ref=d).  As the appellate court described:








The evidence show[ed] that, during
the early morning hours of a night in May 2001, Longview police officer Lisa
Chatterton responded to a call concerning a disturbance at a one‑bedroom
duplex.  Chatterton testified that on
arrival she observed Larry and Marilyn Davis arguing loudly just past a screen
door inside the duplex.  Chatterton
entered the residence and separated the two individuals who were arguing.  She observed another individual, a male,
sitting on a sofa.  Chatterton asked
Marilyn to go outside the house onto a porch and told Larry to remain inside.  Chatterton went outside with Marilyn and
testified that, once she and Marilyn were out of the house, Larry latched the
screen door and closed the inside door and locked it.  Chatterton testified that a few seconds later
she heard a loud gunshot from inside the house. 
She and Marilyn quickly retreated to the street, where another police
officer had arrived.  Chatterton reported
the gunshot over the police radio, which prompted more officers to come to the
scene, where they set up a perimeter around the house.  Larry did not leave the house, and eventually
a SWAT team was called to the scene. 
After failed efforts to make contact with Larry by telephone, a chemical
agent was fired into the house.  Larry
and another female then came out of the house. 
Chatterton testified she did not know what happened to the person she
observed earlier sitting on the sofa. 
The SWAT team then checked the house and found a shotgun containing a
single, fired hull under the bed.

 

Id. at 667.

The appellate court then isolated the
following as supporting its conclusion the evidence was legally sufficient to
support Larry Davis=s conviction for possession of a firearm:

In this case, the duplex was rented
by Larry.  He lived there, and the lease
indicates he had done so for nearly a year before this incident.  The shotgun was found under the bed in the
one‑bedroom residence.  This
evidence, together with the testimony of Chatterton that she heard the shotgun
blast shortly after she observed Larry and Marilyn in a heated argument and
only a few seconds after she observed Larry latch the screen door and close and
lock the inside door, was legally sufficient for the jury to reasonably
conclude Larry was in possession of the firearm as alleged.

 

Id. at 668; see also Bryant v. State,
982 S.W.2d 46, 48B50 (Tex. App.CHouston [1st
Dist.] 1998, pet. ref=d) (holding evidence legally and factually
sufficient to link defendant to cocaine in bedroom when defendant was present in
front yard when officers searched house, cocaine was lying in plain view on
dresser in bedroom she shared with another person, and defendant argued there
were four persons inside house at time who could have placed cocaine in her
room).

Similarly, we conclude the evidence in the
present case is legally sufficient for the jury to reasonably conclude
appellant was in possession of the firearm as alleged.  We overrule appellant=s first point of
error.

II. 
Alleged Prosecutorial Misconduct








In his second point of error, appellant
argues the prosecutor engaged in misconduct 
when he represented to the trial court that the business record
affidavit serving as the predicate for admission of the 911 call tape had been
on file with the court for fourteen days. 
See Tex. R. Evid. 902(10)(a)
(providing for admissibility of business records accompanied by affidavit if
records and affidavit are filed with clerk of the court at least fourteen days
prior to day on which trial commences). 
The affidavit is file stamped March 5, 2004. Trial commenced March 17,
2004, on which day, the prosecutor stated to the court, A[T]he State has a
911 tape, a business record affidavit that=s been in the file
for fourteen days, would like to go ahead and play that tape.@[2]  When the trial court asked whether defense
counsel had any objections, counsel responded, ANone, whatsoever.@  Appellant also did not object to the
prosecutor=s misrepresentation.

To preserve error in cases of
prosecutorial misconduct, a defendant must (1) make a timely and specific
objection;  (2) request an instruction
that the jury disregard the matter improperly placed before the jury; and (3)
move for a mistrial.  Morrison v.
State, 132 S.W.3d 37, 48B49 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (citing Tex. R. App. P. 33.1(a); Cockrell v. State, 933 S.W.2d
73, 89 (Tex. Crim. App. 1996)).  By not
objecting, appellant failed to preserve error regarding the prosecutor=s conduct.  See Banda v. State, 890 S.W.2d 42, 61
(Tex. Crim. App. 1994) (holding, by not objecting, appellant failed to preserve
error regarding complaints that prosecutor misstated the law, argued matters
outside the record, and repeatedly attempted to inflame the jury during closing
arguments and thereby violated his Eighth and Fourteenth Amendment rights).

To preserve error regarding the admission
of evidence, a defendant must timely object or make a motion to strike, stating
the specific ground if the ground is not apparent from the context.  See Tex.
R. Evid. 103(a)(1).  By not
objecting, appellant failed to preserve error regarding admission of the 911
call tape.  See Nichols v.
William A. Taylor, Inc., 662 S.W.2d 396, 399B400 (Tex. App.CCorpus Christi
1983, no writ) (holding, because defendant did not specifically object to
failure to file documents with clerk of court 14 days prior to trial, include
such objection in motion for new trial, or otherwise bring failure to file 








timely to attention of trial court, she could not
raise objection on appeal); see also Granviel v. State, 552
S.W.2d 107, 121B22 (Tex. Crim. App. 1976) (holding capital
murder defendant was not entitled to appellate relief on basis of claim his
medical records were admitted without State=s having complied
with statutory requirement that business record be on file 14 days before
trial, when accused=s trial objections had been too general
and untimely).

We overrule appellant=s second point of
error.

III. 
Alleged Ineffective Assistance of Counsel

In his third point of error, appellant
argues his trial counsel was ineffective for failing to object to admission of
the 911 tape.[3]  To prevail on his claim of ineffective
assistance of counsel, appellant must prove (1) trial counsel=s performance was
deficient, and (2) the deficient performance was so serious it prejudiced his
defense.  Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). To establish the first prong, appellant
must prove by a preponderance of the evidence that counsel=s representation
fell below the objective standard of prevailing professional norms; to
establish the second, that there is a reasonable probability that, but for
counsel=s deficiency, the
result of the proceeding would have been different.  Bone, 77 S.W.3d at 833.  If appellant fails to satisfy either prong of
the Strickland test, we do not need to consider the remaining
prong.  Strickland, 466 U.S. at
697, 104 S. Ct. at 2069.

Appellant must identify specific acts or
omissions of counsel that constitute the alleged ineffective assistance and
affirmatively prove counsel=s acts or
omissions fell below the professional norm for reasonableness.  Garcia v. State, 112 S.W.3d 839, 845
(Tex. App.CHouston [14th Dist.] 2003, no pet.);  see Jackson v. State, 973 S.W.2d 954
(Tex. Crim. App. 1998). The alleged ineffectiveness must be firmly founded in
the record.  Bone, 77 S.W.3d at
835. 








Our scrutiny of counsel=s performance must
be highly deferential, and we indulge a strong presumption counsel was
effective.  Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Appellant must overcome this presumption by illustrating why trial
counsel did what he did.  Belcher v.
State, 93 S.W.3d 593, 595 (Tex. App.CHouston [14th
Dist.] 2002, pet. dism=d). 
In the absence of a record explaining trial counsel=s actions, we will
not conclude trial counsel=s performance fell
below an objective standard of reasonableness unless the conduct was so
outrageous no competent attorney would have engaged in it.  See Garcia v. State, 57 S.W.3d 436,
440 (Tex. Crim. App. 2001).

This court has held compliance with the
fourteen-day period in the precursor to Texas Rule of Evidence 902(10)(a) is
mandatory.   See Chem. Bank v.
Commercial Indus. Serv. Co., 662 S.W.2d 802, 804 (Tex. App.CHouston [14th
Dist.] 1983, writ ref=d n.r.e.). 
Counsel, therefore, might have prevailed on a motion to exclude the tape
itself.[4]








In the present case, however, evidence
about the existence and contents of the 911 call would have been independently
admissible, not for the truth of the assertions on the tape, but to provide an
explanation for why the officers were present at appellant=s home.  See Dinkins v. State, 894 S.W.2d 330,
347 (Tex. Crim. App. 1995) (holding victim=s appointment book
and patient application form were not inadmissible hearsay when State tendered
them to show how appellant became a suspect in the investigation).  Thus, counsel=s failure to
object to the tape itself may have constituted a plausible trial strategy, such
as a plan to appear open and honest with the jury.  See McKinny v. State, 76 S.W.3d 463,
473 (Tex. App.CHouston [1st Dist.] 2002, no pet.); Stroman
v. State, 69 S.W.3d 325, 332 (Tex. App.CTexarkana 2002,
pet. ref=d); Varughese
v. State, 892 S.W.2d 186, 196 (Tex. App.CFort Worth 1994,
pet. ref=d).  Counsel=s conduct was
therefore not so outrageous no competent attorney would have engaged in it;
and, in the absence of a record explaining trial counsel=s actions, we will
not conclude his performance fell below an objective standard of
reasonableness  See Garcia, 57
S.W.3d at 440.

We overrule appellant=s third point of
error.

IV. 
Chain of Custody

In his fourth point of error, appellant
argues the trial court erred in admitting the gun over appellant=s chain-of-custody
objection.   An objection to the chain of
custody is similar to an objection to inadequate authentication or
identification in that both objections complain about the lack of the proper
predicate to admitting the item in question. 
Davis v. State, 992 S.W.2d 8, 10 (Tex. App.CHouston [1st
Dist.] 1996, no pet.).  The sufficiency
of an evidentiary predicate is within the trial court=s discretion, and
we will affirm the judgment unless we conclude the trial court abused its
discretion.  Smith v. State, 683
S.W.2d 393, 405 (Tex. Crim. App. 1984);  Reed
v. State, 158 S.W.3d 44, 52 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d). 
If evidence is properly identified, questions concerning care and
custody typically go to the weight, not the admissibility, of the evidence.  Reed, 158 S.W.3d at 52. 








Texas Rule of Evidence 901 provides in
part, AThe requirement of authentication or
identification as a condition precedent to admissibility is satisfied by
evidence sufficient to support a finding that the matter in question is what
its proponent claims.@  Tex. R. Evid. 901(a).  The rule also provides the following examples
of authentication or identification that conform to the requirements of the
rule: (1) A[t]estimony of a witness with knowledge .
. . that a matter is what it is claimed to be@; and (2) A[a]ppearance,
contents, substance, internal patterns, or other distinctive characteristics,
taken in conjunction with circumstances.@  Tex.
R. Evid. 901(b)(1), (4).  In
short, when an item is easily identifiable and resistant to change, chain of
custody is not required if there is direct evidence at trial that the same item
was taken from the scene of the crime.  See
Davis, 992 S.W.2d at 11.

In objecting to admission of the gun,
appellant argued that, because Officer Anderson did not participate in the
bagging and marking of the handgun, proper chain of custody was not
established.  Officer Anderson, however, testified
he knew the handgun was the one he recovered from appellant=s residence
because of the initials C.A.B., H.P.D. engraved on the side of the
handgun.  Chain of custody, therefore,
was not required because the initials on the handgun made it easily
identifiable, and the gun and the initials were resistant to change.  See Davis, 992 S.W.2d at 11.  Officer Anderson=s testimony
identifying the handgun and its distinctive characteristics, the engraved
initials, properly authenticated it for admission.  See Tex.
R. Evid. 901(b)(1), (4).

We overrule appellant=s fourth point of
error.

Conclusion

Having
overruled appellant=s four points of error, we affirm
the judgment of the trial court.

 

 

 

/s/      John S. Anderson

Justice

 

 

Judgment
rendered and Memorandum Opinion filed February 16, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  See Tex. Pen. Code Ann. ' 46.04(b)(1) (Vernon Supp. 2005).





[2]  Appellant
argues, AThe State Attorney committed prosecutorial misconduct
when he testified to the court and jurors that the business record affidavit
had been in the file fourteen (14) days.@  The prosecutor was not testifying, and the
record does not reflect that the jurors heard his comments to the court.





[3]  At one point,
appellant states, ADefense counsel was ineffective when he failed to
object to the admission of the business record affidavit.@  Read in its
entirety, however, his argument is directed at counsel=s failure to object to admission of the tape.





[4]  In Chemical
Bank, this court upheld judgment on a directed verdict that resulted after
the trial court excluded business records because the plaintiff/appellant had
not complied with the fourteen-day filing requirement of former Texas Revised
Civil Statutes article 3737e , the precursor to present Rule of Evidence
902(10)(a).  Chem. Bank v. Commercial
Indus. Serv. Co., 662 S.W.2d 802, 804 (Tex. App.CHouston [14th Dist.] 1983, writ ref=d n.r.e.).  Regarding an earlier case from the court of
criminal appeals, this court wrote:

 

We realize that in Granviel v. State, 552
S.W.2d 107 (Tex.Cr.App.1976), cert. denied, 431 U.S. 933, 97 S. Ct.
2642, 53 L. Ed.2d 250 (1977) (citing Coulter v. State, 494 S.W.2d 876
(Tex. Cr. App.1973)), a case not cited by either party, the court stated in
dictum that the filing requirement of article 3737e should not be mechanistically
applied.  However, the Coulter
case, upon which the court relied, dealt with the interpretation of
trustworthiness of business records, not a filing deadline.  We find, therefore, that the fourteen day
filing deadline in article 3737e is mandatory.

 

Id.